| OHIO LIFE INSURANCE AND TRUST COMPANY vs. JAMES ROSS AND WILLIAM WINN ET AL. | September Term, 1848. |

[MORTGAGE—EFFECT OF PRIOR REGISTRATION—ASSIGNMENT—NOTICE.]

H. & M., to secure an indebtedness they were about to contract with the firm of D. & N., by means of promissory notes and bills of exchange, to be made, accepted or indorsed by H. & M., and by them passed to D. & N., to an amount not to exceed $50,000 at any one time, on the 31st July, 1845, executed to the latter a mortgage of certain real and personal property, which was not recorded until 6½ o'clock, P. M., of the 16th of June, 1846. On the 11th of April, 1846, the same parties executed a second mortgage of the same property to the same mortgagees, to secure a like indebtedness, not to exceed $75,000, which was recorded at 5 o'clock, P. M., of the 16th of June, 1846. This also not having been recorded in time, with respect to the personalty, a third mortgage, embracing the same and some additional personal property, was executed to the same parties on the 16th, and recorded on the 17th of June, 1846, as a further security, and confirming the preceding one of the 11th of April. Notes to a large amount, drawn and indorsed according to the provisions of these mortgages, were discounted by various parties, and both drawers and indorsers became insolvent. Upon a bill to subject the property to the payment of the debts secured by these mortgages, according to the rights of the respective parties—the contest being, between the plaintiffs, who had discounted the acceptances of H. & M., made subsequent to the second, and in ignorance of the existence of the prior unrecorded mortgage, and the defendants, Winn and Ross, trustees of Samuel Jones, Jr., an insolvent, who had taken these notes, dated both before and after the date of the recorded, but with knowledge of the existence of the prior, mortgage, in exchange for his own notes, which were negotiated for account of H. & M. It was HELD—

That three bills of exchange, dated the 2d, 7th and 14th of May, 1846, drawn by L. S. N., one of the firm of D. & N., on H. & M., payable to the order of D. & N., and accepted by H. & M., having been previously indorsed by said L. S. N., in the name of the firm of D. & N., and which were discounted by the plaintiffs, were within the tenor of these deeds of mortgage, and secured by them.

That the unrecorded mortgage of the 31st of July, 1845, is invalid against the plaintiffs and others holding acceptances secured by the recorded mortgage of the 11th of April, 1846, and that the notes held by Winn and Ross, dated prior to the date of this mortgage, are not entitled to the benefit of the security, and must be excluded from any participation in the fund raised by the sale of the mortgaged property.

Where a fund is to be applied to one of two sets of creditors, a party liable to both, and who has been released from the costs of the suit, is a competent witness in the case.

4

Where a party who has trusted a mortgagor, knowing of the existence of a prior unrecorded mortgage, claims to stand upon a stronger equity than a party subsequently trusting the mortgagor, because the former knew of the unregistered mortgage, and the latter did not—such a pretension is in conflict with the act of 1785, ch. 72, sec. 11.

The assignment of a debt secured by a mortgage, carries the latter with it, whether the mortgage is mentioned in the assignment or not; and the plaintiffs in this case are to be regarded as assignees of the mortgage executed to protect the acceptances held by them, though they did not know of its existence when the acceptances were taken.

A subsequent purchaser, who has actual notice, at the time of his purchase, of a prior unregistered mortgage, cannot avail himself of his purchase against the prior conveyance. This doctrine rests upon the ground of fraud, and is subject to the qualification that the prior unrecorded conveyance shall be available only in cases, where the notice is so clearly proved as to make it fraudulent in a subsequent purchaser to take and record a conveyance in prejudice to the *known* title of the other.

A *bona fide* assignee without notice will not be affected with notice to his assignor, but will be as much protected as if no notice had ever existed.

The assignee of a *chose in action* takes it subject to the equities which existed against it in the hands of the assignor; but these equities are the equities of the debtor himself, and not equities residing in some third person, against the assignor.

The defendants, Winn and Ross, will be allowed a dividend on the notes held by them, dated after the mortgage of April, 1846, only to the extent of the amount which their insolvent, Jones, has paid, or his estate will pay, upon the cross notes given by him in exchange for these of H. & M.

THE CHANCELLOR:

The proceedings in this case show that on the 31st July, 1845, Robert B. Hancock and Thomas W. Mann, being about to become indebted to Frederick Dawson and Lambert S. Norwood, by promissory notes, and bills of exchange to be drawn, accepted, or indorsed, by Hancock and Mann, and by them passed to Dawson and Norwood, to an amount not to exceed at any one time, fifty thousand dollars, for the purpose of securing them in respect thereof, executed to the said Dawson and Norwood, on that day a mortgage of a lot, a parcel of ground in Baltimore county, for which the grantors held the bond of conveyance of the Canton Company of Baltimore; together with the buildings and improvements thereon erected, and certain machinery connected therewith, which are supposed to be fixtures; the property being used as a factory, for the making of oil, candles and soap.

This mortgage was duly executed and acknowledged by the parties, but was not lodged for record until half past 6 o'clock, P. M. of the 16th June, 1846.

Afterwards on the 11th of April, 1846 ; the same parties with their wives, executed a second mortgage to the same mortgagees ; reciting that the former were about becoming indebted to the latter, in a sum not exceeding seventy-five thousand dollars in promissory notes and bills of exchange, and in order to secure them, every such note and bill of exchange made, accepted or indorsed by the said Hancock and Mann, and by them passed to the said Dawson and Norwood, the said mortgage was executed of the same property, and this was recorded on the 16th June, 1846, at 5 o'clock, P. M.

And on the said 16th of June, 1846, the said Hancock and Mann executed to Dawson and Norwood a third deed of mortgagee, in which it was recited that the deed of the 11th of April, 1846, having been omitted by accident to be recorded in time with respect to the chattels therein specified, and the parties; the said Hancock and Mann being desirous of ratifying and confirming said mortgage and adding the additional security of their personal property, and being also desirous of securing said Dawson and Norwood, for paying all money advanced to, or paid for said Hancock and Mann, and also for all responsibilities and liabilities, which said Dawson and Norwood have entered into, or may enter into, for said Hancock and Mann, not to exceed in the whole the sum of seventy-five thousand dollars, this last mortgage was executed, and by it the parties sold and conveyed to said Dawson and Norwood all the property mentioned in the deed of the 11th of April, 1846, and all the lard, tallow, candles, and other personal property of every description, belonging to the said Hancock and Mann, at, or about the said mortgaged premises; and the said property was to be held by the mortgagees, subject to, and upon the like conditions, as are set forth and contained in the said last mentioned mortgage—and upon the further condition, that the said Hancock and Mann should indemnify and save harmless, the said Dawson and Norwood from all liabilities and responsibili-

ties which they have incurred, or may incur, on account of said Hancock and Mann. This mortgage was acknowledged on the day of its date, and recorded on the day following, to wit: the 17th June, 1846.

It further appears, that Lambert S. Norwood, of the said firm of Dawson and Norwood, being at Cincinnati, in May, 1846, drew three bills of exchange on Hancock and Mann, dated respectively, on the 2d, the 7th and 14th of that month, amounting together to $7500, made payable to the order of Dawson and Norwood, one at 60, and two at 90 days date, which bills were accepted by Hancock and Mann, having been previously indorsed by the said Lambert S. Norwood, of the firm of Dawson and Norwood, in the name of the firm, and that these bills were discounted by the plaintiffs and are now held by them.

The original bill which makes all persons interested parties, prays, among other things, for a sale of the mortgaged premises, for the payment of the debts secured by the several mortgages, according to the rights of the respective parties.

The complainants charge, that they purchased said bills for a full and valuable consideration, without notice of any other responsibilities, incurred by Dawson and Norwood, for, and on account of Hancock and Mann, or of the existence of the said mortgages ; and that in equity, they have a right to be substituted for Dawson and Norwood, and are entitled to the benefit of all the securities held by them, as indemnity against such liabilities.

It was also alleged, and appears that prior to the maturity of the bills held by the plaintiffs, Dawson and Norwood the indorsers, and Hancock and Mann the acceptors, became, and still remain insolvent, and utterly unable to pay their engagements.

It further appears, that a very large amount of the promissory notes of Hancock and Mann, indorsed by Dawson and Norwood, were taken by the defendant, Samuel Jones, Jr., and were so taken by him in exchange for his own notes, which were negotiated for account of Hancock and Mann, of which

last notes, a part have been retired by said Jones, but of which, the greater part are yet outstanding and unpaid.

And it was admitted that these notes of Hancock and Mann, indorsed by Dawson and Norwood, were indorsed and negotiated, under the provisions of the said mortgages, or of some one of them.

The notes thus taken by Jones, the first of which was dated on the 12th of December, 1845, and the last on the 26th of June, 1846, amounted to $105,447 02, in addition to which, there were acceptances of drafts, drawn by Hancock and Mann, indorsed by Dawson and Norwood, and some other notes, included in the list filed with the agreement.

It also appeared that Jones suspended payment in, or about the month of July, 1846, and on or about the 26th of October following, assigned his property and effects to the defendants, Winn and Ross, in trust for his creditors; and afterwards, in the year 1847, he applied for, and obtained the benefit of the insolvent laws, when the same parties were appointed, and gave bond as his permanent trustees.

Several questions of interest and novelty are presented by the proceedings in this case, and these have undergone a very careful and full examination by counsel at the bar.

The object of the bill, as we have seen, is to subject the property embraced in the mortgages, to the payment of the obligations intended to be secured by them, and the material question relates to the rights of the several classes of creditors, as they may be adjudged to be entitled to come in under the one or the other of the instruments.

The complainants insist that the mortgage of the 31st of July, 1845, not having been recorded within the time allowed by law, is a void security with respect to them and other creditors, protected by the subsequent instruments; and that all the notes held by Winn and Ross, as trustees of Jones, which were made and issued, prior to the execution of the deed of the 11th of April, 1846, are to be excluded from the provisions of that deed, which was only designed for the security of notes and bills, subsequently issued.   According to the view of the complain-

4*

ants, therefore, it is a question of rivalry to this extent, between them and others similarly situated, and Winn and Ross, and this is the question which has been principally discussed.

It is said, however, that the acceptances held by the plaintiffs do not come within the description of the obligations, intended to be secured by these instruments, that to entitle them to the benefit of the security, it must appear that the notes or bills were made, accepted or indorsed by Hancock and Mann, and passed to Dawson and Norwood, and that as the paper held by these plaintiffs, does not appear to have been passed to Dawson and Norwood, the plaintiffs have no title to maintain the suit. I think, however, this objection cannot be maintained— the acceptances in question are the acceptances of Hancock and Mann, and these acceptances are of bills made payable to Dawson and Norwood, and by them indorsed, I do not think it material whether the bills were first accepted by Hancock and Mann, passed to Dawson and Norwood, and by them indorsed and negotiated ; or whether their indorsement preceded the acceptance. In either case, they are bills which pass into circulation by reason of the indorsement of Dawson and Norwood ; and being so, seem to me, to be within the operation of the deeds, and protected by them. There are acceptances, which, in legal effect, pass to Dawson and Norwood, through whose indorsement alone, can the money intended to be secured by them be claimed. The recital of the deed of the 11th of April, 1846, is, "whereas Robert B. Hancock and Thomas W. Mann are about to become indebted to Frederick Dawson and Lambert S. Norwood, in, and by promissory notes and bills of exchange, to an amount not to exceed at any one time the sum of $75,000; and in order to secure to said Dawson and Norwood every and all promissory note or notes, bill or bills of exchange made, accepted or indorsed by said Hancock and Mann, and by them passed to said Dawson and Norwood, this instrument is executed."

The object of the deed was to indemnify Dawson and Norwood to that amount, whether the evidence of the indebtednes of Hancock and Mann existed in either of the forms specified

in the instrument, strictly speaking, a bill accepted by Hancock and Mann could not be passed to Dawson and Norwood—that could only be done by the payee or indorsee of the bill, and yet I presume it would not be contended, if these bills had been accepted by Hancock and Mann, before they were indorsed by Dawson and Norwood, that they would not come within the provisions of the deed. The acceptance by Hancock and Mann, is certainly *prima facie* evidence, that they were indebted to the drawer of the bills, in their amount, and such acceptance is an engagement to pay that amount to the payees, Dawson and Norwood, to whom they became indebted as acceptors, which brings them within the tenor of the deeds of mortgage. It is true, Hancock and Mann, the acceptors, did not pass these bills to Dawson and Norwood ; nor could they so pass any bills accepted by them, as that could only be done by the payees, or indorsees ; and, therefore, if it is indispensable to bring notes, and bills within the provisions of the deeds, that they should be passed by Hancock and Mann to Dawson and Norwood, it is obvious that the term "acceptance" had as well be struck out of the deeds.

My opinion, therefore, is that this objection cannot be maintained.

The defendant Robert B. Hancock has been examined under the usual order of the court, passed in such cases; but his competency is excepted to by the defendants, Winn and Ross, upon the ground that he is materially interested in the event of the suit, and in maintaining the plaintiffs' claim.

This witness is of the firm of Hancock and Mann, the acceptors of the bills held by the plaintiffs, and the makers and acceptors of the notes and bills held by Winn and Ross, as trustees of Samuel Jones ; and as the question in this case is, whether the property in controversy shall be applied to the satisfaction of the one or the other of these creditors, the witness being liable to both, would seem to be in equilibrium ; except as to the costs of this case, from which confessedly he has been released, and if so, he would clearly be a competent witness. *Greenleaf on Evidence, sections* 399, 420.

It appears, however, that the witness has been discharged under the insolvent laws, and as this discharge releases him as to his future earnings, and all other acquisitions except those mentioned in the act of assembly ; and as the discharge is inoperative as regards his foreign creditors, he is said to be interested in having the plaintiffs, who are foreign creditors, paid rather than the defendants, Winn and Ross, who are citizens of this state.

This presents a question of some difficulty, but I do not deem it necessary to express an opinion upon it, as I think the release which has been executed by the plaintiffs in this case, removes the objection to his competency.

The words of the release are, that the plaintiffs "do hereby release Robert B. Hancock, from all liability, or responsibility, by reason of the event of this cause."

If by reason of the evidence of this witness, a portion of the fund in question, is applied to the payment of the claims of these plaintiffs, the responsibility of the witness, as an acceptor, is discharged *pro tanto ;* and if the suit fails, the same consequence would follow, to the extent of the dividend, which would be applicable to the claims, if successful.   The failure, or the success, of the suit, is the event upon which the release operates.   The plaintiffs say in the release, let the event of the suit be as it may, the witness shall not be prejudiced.   If it succeeds, he will be entitled to a credit upon his acceptances, to the amount of the recovery, and if it fails, he is to be released to the same extent.   This must be the construction of release, or else the liability of the witness would depend upon the event of the suit, in opposition to its terms, unless this is the construction of the release, it would have no operation further, than to discharge the witness from the cost of the cause, an effect much more limited than the parties could have intended, and much more restricted, than I think its terms fairly import, which are to be taken in the strongest sense against the party using them.

The question, however, which has occupied principally the attention of the council in the argument; and confessedly the

most important one in the cause, relates to the relative rights of the creditors, claiming the benefit of these mortgage securities.

It is contended on the part of the defendants, Winn and Ross, trustees of Jones, that as the latter received the notes of Hancock and Mann, with knowledge of the existence of the mortgage executed for their security, and as the plaintiffs took the acceptances held by them, in ignorance of the mortgage, that the claim of the former to the benefit of the security, must prevail over the latter.

It is supposed that Jones, knowing of the mortgage, entered into the arrangement, by which his paper was to be exchanged for the paper of Hancock and Mann, with direct reference to it; and therefore his equity must override the equity of a party, who contracted for a security merely personal, but who discovers the existence of a collateral pledge, of which he was in ignorance at the time.

It is certainly not unworthy of remark, that if the defendant Jones did know of the existence of the mortgage of the 31st of July, 1845, he also knew it was unrecorded, and the list of the notes of the mortgagors, filed by his trustees, shows, that but a very inconsiderable proportion, of the large amount of the papers of these parties received by him, was so received, after the time limited by law for the registration of such instruments had gone by. He knew the mortgaged premises were in possession of the mortgagors, and that they were the ostensible owners thereof, unaffected by this mortgage, so far as the public could be informed, because it was not recorded; and then, when a question arises, between him, and a party trusting a mortgagor, subsequently he claims to stand upon a stronger equity, because he knew of the unregistered mortgage, and the other party did not. Such a pretension is in conflict with the act of 1785, ch. 72, section 11.

But is it true that the plaintiffs in this case occupy less eligible ground, than they would have occupied, if instead of taking acceptance, secured by a mortgage, they had taken an assignment of the mortgage itself?

It is not of course denied, that courts of equity regard a mortgage as mere security for the debt, however indefeasible the title of the mortgagee may be at law, by the default of the mortgagor ; and the court of appeals have said, that an assignment of the debt, passes the mortgaged premises as appurtenant to the debt, and that they are incapable of a separate, and independent alienation. *Pratt* vs. *Vanwyck's Ex'rs.* 6 *G. & J.,* 495.

And Chancellor Kent has decided that the debt cannot reside in one person, and the pledge in another, the mortgagee cannot convey his interest in the mortgage to a third person, absolutely, or by way of mortgage, *distinct* from the debt it was intended to secure. *Aymar* vs. *Beill et al,* 5 *Johns. Ch. Rep.* 570.

The same doctrine was maintained in *Southerin et al* vs. *Mendum,* 5 *New Hampshire,* 430, where it was said that the mortgage was merely an incident to the debt, which could not be separated from its principal, and in *Cutler* vs. *Haven,* 8 *Pick.* 490, it was decided that when a mortgagee transfers to another person the debt, secured by the mortgage, he ceases to have any control over the latter.

The same principle is established by the case of *Jackson.* vs. *Blodget,* 5 *Cowen,* 202, when it was said that the assignment of a bond secured by mortgage, carried the mortgage with it ; though the latter was not named in the assignment, for the mortgage could not exist as an independent security in the hands of one person, while the bond belonged to another, that the debt (the evidence of which was the bond) is the principal, the mortgage the accessory, and *accessorium non ducit, sed sequitur principale.*

I take it, therefore, to be firmly established upon authority, that the assignment of a debt secured by mortgage, carries the latter with it, whether the mortgage is mentioned in the assign- or not, and that consequently, in determining upon the rights of these plaintiffs, they are to be regarded as the assignees of the mortgage, executed to protect the acceptances held by them, though they may not have known of its existence, when the acceptances were taken by them.

But it is said, that though the holder of a subsequent mortgage may be preferred to the holder of a prior unrecorded mortgage, without notice; yet if, though not recorded, the former has notice in fact of its existence, the holder of the unrecorded mortgage will be preferred, that is, that notice in fact is equivalent to the registration of the deed, and that as in this case, Dawson and Norwood, the parties to whom both mortgages were given, must of course have had notice of the first, their assignees of the posterior one, standing in their shoes, are bound by the equities which affected the instrument in their hands. There is no doubt, though it has been sometimes regretted, that in a state where the registration of conveyances is required, if a subsequent purchaser has actual notice at the time of his purchase of a prior unregistered mortgage, he will not be permitted to avail himself of his purchase against the prior conveyance; and the ground upon which the doctrine rests, is, that the taking of a legal estate, after notice of a prior right, makes a person a *mala fide* purchaser.

It is put upon the ground of fraud, and is subject to this qualification, that the prior unrecorded conveyance shall be available only in cases, where the notice is so clearly proved as to make it fraudulent in the subequent purchaser, to take and record a conveyance, in prejudice to the known title of the other. 1 *Story's Equity, sections* 397, 398. *Le Neve* vs. *Le Neve*, 3 *Atkyns*, 654. *Jackson* vs. *Van Valkenburgh*, 8 *Cowen*, 264.

Assuming this to be the ground, and it seems too clearly established by authority, and justified by principle to dispute it; and it would be difficult to maintain, that Dawson and Norwood, in taking the second mortgage, are within the reason of the principle. In taking this second mortgage, they were not taking away the right of another person, by getting the legal title. They cannot be said to have been practicing fraud upon themselves, by a contrivance to defeat the prior conveyance, for that private conveyance constituted their own security, for a large sum of money. Suppose the controversy in this case, instead of being between the trustees of Jones, and the plain-

tiffs, as assignees of the second mortgage, was between the latter, and Dawson and Norwood, the mortgagee themselves ? would it be possible for them to defeat the right of the plaintiffs, upon the ground, that they, Dawson and Norwood, when they received the second mortgage, knew of the prior unrecorded one, and that they were guilty of a fraud upon themselves, in taking the second mortgage ? It is impossible to suppose they could maintain such a position. By withholding the first mortgage from the record, and putting the second upon the record, they secreted the one, and published the other ; and to suffer them afterwards to defeat rights, derived from themselves, founded upon the registered mortgage, by setting up the concealed one, would be to allow them to perpetrate a fraud. It is, I think, impossible such a principle can maintain in a court of equity, and if Dawson and Norwood could not set up the first mortgage, to the prejudice of the second, under such circumstances, I do not see how the trustees of Jones can ; especially in reference to the notes of Hancock and Mann, which he received after the time limited for recording the mortgage, had run out.

But even if the second mortgage had been given to a third party, having actual notice of the prior unregistered one, still I think the *bona fide* assignee, without notice of such second mortgage, would not be affected with the notice to his assignor. It is said by the court in 8 *Cowen*, 264, to be "well settled, that if one affected with notice, convey to another without notice, the latter is as much protected, as if no notice had ever existed."

And Mr. Justice Story says, "if a person who has notice, sells to another who has no notice, and is a *bona fide* purchaser for a valuable consideration, the latter may protect his title, although it was protected with the equity arising from notice, in the hands of the person from whom he derived it."

This doctrine he says has been settled for nearly a century and a half. 1 *Story's Equity*, sections 409, 410.

It is said by the counsel for Winn and Ross, that these plaintiffs took the acceptances, subject to the several equities they were subject to in the hands of Dawson and Norwood,

and as a general rule, there can be no doubt, that the assignee of a *chose in action*, not negotiable, takes its subject to the equities which existed against it, in the hands of the assignor. But the equities, subject to which it passes to the assignee, are the equities of the debtor himself, and not equities residing in some third person, against the assignor, for, as was observed by Chancellor Kent, in *Murray* vs. *Sylburn*, 2 *Johns. Rep. ch.* 443, the assignee may be unable, with the utmost diligence, to ascertain the latent equity of third persons against the obligee, whereas with respect to the debtor himself, he can go to him, and ascertain what claims he may have against the bond.

And the Court of Appeals of this state, in *Jones* vs. *Hardesty,* say, "he who takes an assignment of a *chose in action*, not negotiable, takes it subject to all the legal and equitable defences of the obligor, or debtor, to which it was subject in the hands of the assignor." It would, therefore, seem to follow, that the only equities which would attach against the second mortgage, and follow it in the hands of the plaintiffs, would be the equities of Hancock and Mann, and that the secret equity of Dawson and Norwood, or of Jones, founded upon the prior unrecorded mortgage, could not be urged against them.

My opinion upon this point, therefore, is, that the unrecorded mortgage of the 31st of July, 1845, is invalid against the plaintiffs, and others, holding notes, or acceptances secured by the recorded mortgage of the 11th of April, 1846; and that the notes of Hancock and Mann, held by Winn and Ross, trustees of Samuel Jones, Jr. which bear date prior to the date of the mortgage of the 11th of April, 1846, are not entitled to the benefit of the security, and must be excluded from any participation in the fund, raised, or to be raised, by a sale of the property embraced in it.

My opinion is founded upon the legal effect, of the failure or neglect, to record the first mortgage, and the registration of the second, independent of the positive agreement, and the motive for that agreement, which the bill charges, and Hancock proves, not to record the first mortgage. If this mortgage was, as alleged in the bill, and as proved by Hancock, withheld from

the public records for the purpose of giving a fictitious credit to Hancock and Mann, it would seem impossible to support it as against subsequent creditors, upon any principle recognised in courts of equity, and although Dawson and Norwood, the mortgagees, and the only defendants who could speak with any authority in regard to the motive, deny the motive charged in the bill, they do not deny that it was withheld from the record by design ; and perhaps that design is so much in conflict with the policy of our registration acts, as to subject the instrument to all the objections which would exist against it, if the design charged in the bill had been confessed. It is also worthy of observation, that though the mortgage of the 16th of June, 1846, recites that the preceding one of April, was omitted by accident to be recorded, it is no where pretended that accident prevented the recording of that of the 31st of July, 1845.

The next question to be considered, relates to the dividend which the trustees of Jones are to receive, upon the notes held by them of Hancock and Mann, dated after the mortgage of April, 1846, and which were received in exchange for the notes of Jones, under the arrangement spoken of in the proceedings.

It appears by the answer of Winn and Ross, that Jones suspended payment in or about the month of July, 1846, and about the 26th of October of the same year, assigned to them all his property, in trust, to pay his debts ; and that in the year 1847, he applied for, and obtained the benefit of the insolvent laws ; the defendants Winn and Ross being appointed, and having qualified as his permanent trustees ; and it further appears by the same answer that many of the notes of Jones so given in exchange, are yet outstanding, and unpaid ; and it is yet impossible to determine, as it would seem, what the estate of Jones will divide among his creditors ; though it is understood the deficiency will be large.

Under these circumstances, the question is, shall the trustees of Jones be allowed to receive out of the fund, a dividend upon all the notes of the mortgagors held by them ? or shall they only be entitled to the extent, to which the exchange, or cross paper of Jones has been paid ?

It is not understood to be denied, that a bill of exchange, or promissory note, given in consideration of another bill or note, is valid, and that in England it may be proved under a commission of bankruptcy, and where cross bills are given, and it is understood that each party shall pay his own acceptances, a holder cannot prove under a commission, any payment made on his own acceptance, there being no implied contract of indemnity, in the case of such cross acceptances. *Eden on Bankrupt Law*, 151, 152.

But the case we are now considering, has this peculiar feature, that all the makers of the cross paper on both sides have become bankrupt, and the holders of the notes given by Jones in exchange for those of Hancock and Mann, will only receive a dividend, and perhap sa very small dividend, from his estate.

Under such circumstances, to permit Jones, or his trustees, to receive dividends upon all the notes of Hancock and Mann, held by them, whether the counter notes given by him have, or have not, been paid, and before it has been ascertained what dividends the holders thereof will receive, would in my opinion be inequitable, and cannot be permitted. If Jones is to be regarded in the light of a surety of Hancock and Mann, then it is clear he could not come upon this estate, without first taking up his own notes. *Eden on Bankrupt Law*, 150. *Homer* vs. *Savings Bank*, 7 *Conn. Rep.*, 478.

It seems, however, to be the practice in England in case of these cross demands, between the surety and the bankrupt, and upon which, until either has actually paid, they are substantially, only sureties of each other, to suspend the dividend, until it appears what the surety actually pays, and how far he exonerates the bankrupt estate from his own paper. *Eden*, 150.

In this case, the auditor will be directed to ascertain, and report, what amount of the paper given by Jones, in exchange for the paper of Hancock and Mann, now held by his trustees, has been paid by him, and to that extent a dividend will be allowed ; and dividends on the residue, will be suspended for

a reasonable time, for the purpose of ascertaining what proportion of such paper now outstanding, the estate of Jones will pay.

The original bill, as has been stated, prays that the mortgaged premises may be sold, for the payment of the debts properly chargeable thereupon; but on the 23d of September, 1847, the complainants filed their supplemental bill, in which they set forth, among other things, that since filing their original bill, they had discovered, that upon an amicable bill, filed previously by the said Samuel Jones, against the said Hancock and Mann, and Dawson and Norwood, a decree had been passed by this court, for the sale of the real estate of Hancock and Mann, under the unregistered mortgage; that the trustee appointed by the said decree, had sold said real estate, and praying that the bill of these complainants may be consolidated with the proceedings under said decree, and taken to be, and considered as one and the same case, and that all the proceeds of sale, in the hands of the trustee, may be ordered to be invested, under the order of this court.

This supplemental bill also prays, that all persons holding paper or securities covered, or claimed to be covered, by the aforesaid mortgages, may be required to file their claims in this court, by some day to be limited for that purpose.

In view of this supplemental bill, I am of opinion, that a resale of the property cannot now be decreed. It seems to me manifestly to adopt the sale made by the trustee under the decree referred to, and to confine the prayer for relief, to the proceeds of the sale; the order therefore will consolidate these two cases as prayed.

There is yet one other branch of this case to be considered.

The bill charges, that John Clarke, Nelson Clarke, and Henry Mankin, trading under the name and style of Clarke and Kellogg, have, in confederacy with some of the parties, held, worked, and wasted, the property included in the two last deeds of mortgage; and it appears by their answer, and supplement thereto filed, and received by consent, that these parties, as commission merchants, and at the request of Hancock

and Mann, and Dawson and Norwood, and Samuel Jones, in the year 1846, received a quantity of articles made at the factory, upon which they made considerable cash advances— and that on the 20th of September, 1847, there remained a balance in their hands of $9819 22, resulting from sales made by them.

The bill calls for an account of this property, which is included in the confirmatory mortgage of the 16th of June, 1846, and it appears by the evidence of Hancock, that when Jones, or Dawson and Norwood, took possession of the factory on the 21st of June, 1846, the stock of material on hand, worked up, and to be worked up, was worth about $18,000. There was also evidence, that after Jones got possession of the factory, he purchased materials which were used there to the amount of $23,000. The council for the complainants insist, that Clarke and Kellogg are responsible to the creditors under the two last mortgages, for the proceeds of the sales of manufactured articles, on hand, and made from materials on hand, on the 21st of July, 1846, except such portion thereof as was paid by them to Dawson and Norwood, and which amounted, according to the proof of Hancock, to $3280.

Without meaning now to decide this question, the order will direct the auditor, to state such accounts as will enable the court, hereafter, to make such a disposition of it, as the rights of the parties, and the justice of the case, may seem to require.

BRENT & WILKINS for complainants.
DULANEY & ALEXANDER for defendants.