JOHN H. ING, PERMANENT TRUSTEE
OF JESSE BROWN,
vs.
JESSE BROWN AND ROBERT BRANNAN.

JULY TERM, 1850.

[MORTGAGE—FRAUDULENT CONVEYANCES.]

A BILL of sale, intended as a security for money loaned and to be loaned, must be considered as a mortgage, though absolute upon its face.

The proviso to the 2d section of the Act of 1825, ch. 203, that the grantee shall not have the benefit of the recording of a conveyance which, by any other instrument or writing, appears to have been intended only as a mortgage, unless such other instrument be also recorded therewith, does not apply to the case of a deed absolute upon its face, and where no other instrument was executed, though it was intended merely as a security for money loaned.

An answer responsive to the bill cannot be overruled, unless contradicted by the testimony of two witnesses, or of one sustained by pregnant circumstances; circumstances standing alone will not destroy the answer.

A conveyance defectively executed, may be set up as a valid contract in Equity, and a confirmatory deed will give it full validity.

[The defendant, Jesse Brown, executed a bill of sale on the 13th of December, 1847, conveying to the defendant, Robert Brannan, all his stock of goods in a certain store in the city of Baltimore, in consideration of $800 paid by the grantor to the grantee. An affidavit was made to this conveyance by Brown, the grantor, that he received the full sum of money set forth therein, and purported to have been paid to him by Brannan, the grantee, on the 11th of April, 1847. A similar conveyance was made by the same party, of the same property, to cure the defect of the first deed, in that the affidavit thereto was made by the grantor instead of the grantee.

On the 14th of April, 1848, Brown applied for the benefit of the insolvent laws, and the complainant, John H. Ing, was appointed his permanent trustee; and on the 18th of the same month, filed the present bill in the Equity side of Baltimore County Court, impeaching said conveyances as fraudulent

under the statute of Elizabeth, and as executed in fraud of the insolvent laws, and by an order of said Court, passed upon his bill, he was appointed receiver, to take charge of the property contained in them.

The explanation given of this transaction, in the answer of Brown, is this: that in November, 1847, he being about to engage in business as a tobacconist, in the City of Baltimore, Brannan agreed to advance him the sum of $800, to aid him therein, and did accordingly advance him, between the 5th of said month and the 21st of January following, money, at various times and in various sums, which the answer particularly specifies, amounting in all to $584; and on the 11th of February following, he purchased of said Brannan various articles specified, amounting in all to $408; and that at Brannan's urgent request, he did, for the purpose of securing the payment of the sum already advanced, being then about $300, as well as the balance of said $800 agreed to be advanced and as a guarantee for which Brannan delivered to him a note of a Boston firm for $500, he executed the bill of sale of the 13th of December, 1847; and to cure the defect therein, subsequently executed that of the 11th of April, 1848. The other facts of the case are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR:

It being admitted in the answer of Brannan, that his purpose in taking the bill of sale of the 13th of December, 1847, was to obtain a security for money loaned and to be loaned the grantor, I am of opinion that though the instrument is absolute on its face, it must be considered as a mortgage. *Dougherty* vs. *McColgan*, 6 *G. & J.*, 275.

Being a mortgage in contemplation of equity, it has been insisted that no effect can be given to it, and the grantee must lose the benefit of the security, by reason of the provision contained in the 2d section of the Act of 1825, ch. 203. But an examination of that statute will show it to be entirely inapplicable to such a conveyance as this. This is not a conveyance " which, by any other instrument or writing, appears to have

been intended only as a mortgage-security in the nature of a mortgage, though it be an absolute conveyance in terms," and of which, according to the enactment, the person for whose benefit such deed shall be made, shall not have the benefit or advantage of the recording thereof, unless the defeasance or qualifying instrument be also recorded therewith.

In this case no such defeasance or other instrument of writing has been executed, and, consequently, none such could be recorded. The bill of sale here stands unaffected by anything in writing between the parties, and we get at the fact that it was designed simply as a security for money loaned and to be loaned, from the answer of the grantee. This case, therefore, must be decided without reference to the Act referred to.

It appears that the bill of sale of December, 1847, which was duly acknowledged and recorded, was supposed to be defective, in consequence of the affidavit required by the Act of 1846, ch. 271, with reference to the *bona fide* character of the consideration, having been made by the grantor instead of the grantee, and that to cure this defect and confirm the conveyance, a second instrument of the same description was executed, acknowledged, and recorded on the 11th of April, 1848.

These conveyances are assailed by the complainant, as the permanent trustee in insolvency of Brown, the grantor, upon the ground of fraud under the statute of Elizabeth, and as having been made in derogation of our insolvent system. The allegations of the bill, both with regard to the alleged fraudulent and covinous character of the transaction, and the insolvency and contemplated application for relief, when the first bill of sale was executed are explicitly denied by the answers of both defendants, that is to say, the fraud is denied absolutely and altogether, and the charge that the conveyances were made in view of the insolvent laws, and in violation of their provisions, is positively denied when the first was executed, both defendants insisting, and Brown especially, who of all men could speak most confidently of his condition and purposes, that he was not, at the date of the first conveyance,

insolvent in fact, and that he did not then contemplate availing himself of the benefit of the provisions of the insolvent laws.

Now, this answer being responsive to the averments of the bill, cannot be overruled, unless contradicted by the testimony of two witnesses, or by one sustained by pregnant circumstances. There is no pretence that he is contradicted by a witness, and circumstances standing alone, the Court of Appeals have said, will not destroy the answer. *Roberts et al.* vs. *Salisbury*, 3 *G. & J.*, 426. It has been urged that there is a contradiction or manifest inconsistency between the affidavit made by Brown to the first conveyance, and his answer to the bill. But although, strictly speaking, the whole consideration of $800 mentioned in the conveyance, had not been paid in cash at that time, I cannot bring myself to think that under the circumstances detailed in the answers, the party intended to commit perjury in that affidavit, or that he did not believe that substantially the consideration was paid.

Indeed, it appears to me a circumstance not undeserving of notice, and favorable to the fairness and frankness of the conduct of the defendants, that they have unreservedly stated the actual nature of that transaction. It can scarcely be doubted, that if they had designed a fraud, and to support that fraud by perjury, their answers to the present bill would not have exhibited any, the least difference from the affidavit. If perjury was committed in the affidavit taken before the magistrate, both the defendants were guilty, the one of perjury, and the other of subornation of perjury, and upon that supposition there is, I think, very little doubt the answers to this bill would have been formed in full accordance with the affidavit. Fraud, it has been over and over decided, is not to be presumed but must be proved, but in this case, which involves the charge of perjury as well as fraud, no witness has been produced to sustain it. If the answers speak the truth, the consideration expressed in them was paid by the grantee in the conveyances, and as they must be presumed to speak the truth, being responsive to the bill, unless disproved by that degree of evidence which the rule requires, I do not think there is any

principle which will authorize me in taking from the defendant, Brannan, the benefit of his security.

It is not denied that if the transaction was *bona fide*, that the conveyance of December, 1847, though defective by reason of the mistake in regard to the affidavit required by the Act of 1846, may be set up as a valid contract in equity, and that the confirmatory deed of April, 1848, would give it full validity. The case of *Alexander* vs. *Ghiselin*, 5 *Gill*, 138, establishes this proposition, and as, for the reasons stated, I am of opinion that the complainant has not succeeded in showing fraud, or that the conveyances are void under the insolvent laws, it follows that the complainant must be denied the relief prayed by his bill. But although the complainant is not entitled to a decree vacating the conveyances in question, yet inasmuch as these conveyances constitute mortgages, the case last referred to shows that the property embraced in them must be taken possession of and administered by the complainant, as the permanent trustee of the mortgagor. It is understood that the complainant, as receiver, under the appointment and authority of the Baltimore County Court, has sold the property, but I do not find among the proceedings a report of the sale, and therefore it is impossible to say whether the proceeds will or will not be sufficient, or more than sufficient, to pay the mortgagee's claim. My opinion, then, is, that the bills of sale shall stand and have effect as mortgages, and that the proceeds of the will made by the receiver shall be applied to the payment of the mortgage debt. The receiver should make a report of his sale, and then the cause should go to the Auditor for an account. The question of costs will be reserved.

—

J. H. ING, and T. P. SCOTT, for Complainant.

C. H. PITTS, and C. S. S. LEARY, for Respondents.