# MARYLAND REPORTS.

## DECEMBER TERM, 1857.

## JAMES T. PARSONS *vs.* GEORGE W. HUGHES.

A Court of Equity will, upon a bill filed by the mortgagee, either *before* or *after* default made by the mortgagor, interfere by *injunction* to prevent waste or destruction, by the mortgagor in possession, of the mortgaged property, whether real or *personal*.

APPEAL from the Circuit Court for Baltimore city.

The bill in this case, filed on the 9th of March 1857, by the appellee against the appellant, alleges, that the complainant became surety of Parsons, and on the 8th of October 1855, united with him in confessing a judgment in favor of the parties to whom the debt was due, to be released on payment of $245 in six months, and of $244.85 in twelve months, with interest on each sum from the date of the judgment; that on the 14th of January 1856, Parsons executed to the complainant, in order to indemnify him on account of his suretyship, a bill of sale of all his stock in trade, furniture and fixtures in a certain shop in Baltimore city, and all book-accounts or other *choses in action* belonging to him, the said Parsons, upon the terms and conditions therein mentioned, a copy of which is filed with the bill as an exhibit; that Parsons has made default in paying the judgment according to its terms, and the complainant has been compelled to pay the same, and has received no reimbursement therefor from Parsons, except the sum of about $110. The bill further charges, that at the time this bill of sale was executed, the property therein embraced was worth (as complainant supposes) about $400, and the book-accounts, *choses in action* and other debts due Parsons, likewise mentioned therein, about $900; that for the last twelve

1    v. 12.

or eighteen months, Parsons has become irregular in his habits and inattentive to his business, which is now greatly reduced; that the aforesaid stock in trade, fixtures, &c., has been so much reduced as not to be worth more than (as complainant supposes) $50; that for the last six or twelve months, Parsons has been, with all practicable speed and means, collecting the book-accounts and reducing the *choses in action* aforesaid into possession, without handing the same, or any part thereof, over to complainant; that the acts of said Parsons, in collecting the accounts and *choses in action*, and putting the proceeds into his own pocket, as above set forth, are in fraud of the complainant's rights; that under the terms of the aforesaid bill of sale, the complainant is entitled to a new bill of sale of all the goods and chattels, stock in trade, book-accounts and *choses in action* of which the said Parsons may now be possessed; that said Parsons is now, and for some time past has been, using his best exertions to obtain the money for all said accounts, *choses in action*, &c., and is about to sell out the remnant of the aforesaid stock in trade, and is actually removing the same, with the fraudulent intent to appropriate the whole proceeds thereof to his own use, and thereby deprive the complainant of his rights and remedies under the bill of sale last mentioned, all of which is a gross fraud upon him; that said Parsons has no other property or effects than that mentioned in the bill of sale, and is utterly insolvent; that the whole of said property and effects, if obtained by the complainant, would not pay more than sixty or seventy per cent. of his claim, and that if Parsons knew that complainant was about to proceed against him, he would secrete said property and books, and collect the debts thereon due him at large discounts, so as the more entirely to perpetrate the fraud he now contemplates. Inasmuch, therefore, as the complainant is remediless in the premises at common law, and entitled to relief only in a court of equity, where matters of this and the like sort are properly cognizable, the bill prays for an answer under oath, for the appointment of a receiver to take charge of the property, and for an injunction restraining Parsons from selling or in any manner disposing of any of the goods and

chattels, stock in trade, book-accounts or *choses in action* aforesaid, and from collecting, receiving or assigning any of the book-accounts, *choses in action,* or other debts due him aforesaid.

The bill of sale or mortgage from Parsons to Hughes, filed with the bill, and dated the 14th of January 1856, recites, that "whereas said Hughes and Parsons did, on the 8th of October 1855, confess judgment to," &c., "for the sum of $489.85, as by reference to the judgment docket of the Court of Common Pleas will appear; and whereas the aforesaid sum of $489.85 was the individual debt of the said Parsons and the said Hughes the surety for the payment thereof; and whereas the said Parsons, in order to indemnify and save harmless him, the said Hughes, from and against all loss or damage that may happen to or befall him, by reason of his said suretyship or confession of the judgment aforesaid, doth hereby acknowledge himself bound unto the said Hughes in the penal sum of $500, to be paid in two equal instalments in twelve and eighteen months from this date." The deed then, in consideration of the premises, and of one dollar, current money, proceeds to convey to Hughes, his executors, &c., "all stock in trade, furniture and fixtures, or other goods and chattels now in and about the house or shop at No. 119 Broadway, in said city, as well as all book-accounts now standing in the business books of the said Parsons, or other *choses in action* at present belonging to him. And the said Parsons, in order more effectually to secure the said Hughes against all loss in the manner aforesaid, doth hereby, for himself, his executors, administrators and assigns, covenant with the said Hughes, his executors, administrators and assigns, that he or they, upon being so requested, will give him or them a new bill of sale of and for all such goods and chattels, stock in trade, book-accounts and *choses in action,* as he or they may at the time be possessed of, or in any manner entitled to, similar in all its terms and conditions to these presents, so that this indenture shall or will give to the said Hughes a continual equitable lien upon the said goods and chattels, book-accounts and *choses in action,* for the purposes of indemnity as afore-

said. These presents are, however, made upon this condition, that if the said Parsons do pay the judgment aforesaid, and shall save harmless the said Hughes from all loss that may happen to or befall him, by reason of his having confessed said judgment, or become security as aforesaid, then this indenture becomes void, otherwise to remain in full force and virtue.''

A copy of the judgment was also filed, as an exhibit, with the bill. The court (KREBS, J.,) granted the injunction as prayed, and the defendant, having filed his answer, entered a motion to dissolve the injunction, and afterwards appealed from the order granting it.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Thomas J. Warrington* and *William J. Stone* for the appellant:

1st. The bill discloses a case of a party claiming an indebtedness in virtue of a bill of sale or mortgage of personal property. It is evident that, as mortgagee, he was entitled to the possession of the property upon demand made, and had Parsons refused to deliver it, he could have recovered the stock in trade by replevin. That was his legal and *sufficient* remedy, for had he pursued it, the stock in trade, which is alleged in the bill to be worth more than the debt, could have been recovered. And as to the book-accounts and *choses in action*, there was also a *legal remedy* by attachment. The law is clear, that an *injunction* will not be granted where there is any other sufficient remedy either at law or in equity. There is nothing in the relation of mortgagee and mortgagor to prevent an action at law, (2 *Greenleaf's Rep.*, 173, *Smith vs. Goodwin,*) and in all such cases there is no relief in equity, and especially not by injunction.

2nd. But the allegations of the bill do not make a case for an injunction. In the case of personal property, the necessity must be *imperative* and *extraordinary*, to justify interference by injunction. 2 *Story's Eq.*, secs. 26, 27. In view of the

rulings in the cases of *Uhl vs. Dillon*, 10 *Md. Rep.*, 500, and *Warfield vs. Owens*, 4 *Gill*, 382, this injunction should not have been granted. The allegations of the bill in *Uhl vs. Dillon*, were quite as strong and very much like those in the present case, and yet the injunction was refused.

*L. M. Reynolds* for the appellee:

In determining whether the order granting this injunction was properly or improperly passed, this court is confined to the *bill* alone, (10 *Md. Rep.*, 418, *McCann vs. Taylor*,) and its allegations make a clear case for an injunction. In the case of *Brown vs. Stewart*, 1 *Md. Ch. Dec.*, 87, the chancellor decided, that if a mortgagor in possession of personal property is committing waste or destruction, equity will restrain him by *injunction;* that because the mortgagee may take possession of the property, or recover it by an action of replevin, he is not, on this account, precluded from the right of having it protected in a Court of Equity, and that a mortgagee may pursue his remedy at law and *in equity* at the same time.

Tuck, J., delivered the opinion of this court.

This is an appeal from an order granting an injunction, and must be determined on the bill, without reference to the answer. *McCann vs. Taylor*, 10 *Md. Rep.*, 429.

Upon carefully considering the averments of the bill, which on this hearing must be taken as true, we are of opinion that the order was properly granted. It is unnecessary to multiply authorities on the question of the court's power to interfere by injunction to prevent waste or destruction of property covered by mortgages. It has been frequently exercised, and was recognized in *Clagett vs. Salmon*, 5 *G. & J.*, 314, where the bill was filed before the mortgagee was entitled to proceed to recover the debt. The same principle applies after default made by the debtor, for the mortgagee is not bound to take possession of the property by process at law. He may elect to prosecute his remedy in equity, and the debtor ought not to complain of being restrained from impairing the security which is held by his creditor. The subject was before the late chan-

cellor, in a case where real and personal property were both conveyed by mortgage, and the debtor was selling and misapplying the personalty. *Brown vs. Stewart*, 1 *Md. Ch. Dec.*, 87. Concurring in the views there expressed, we are willing to rest our affirmance of the present order on the chancellor's opinion.

*Order affirmed and cause remanded.*