# PHILLIPS LEE GOLDSBOROUGH et al., Trustees, vs.

## T. GARLAND TINSLEY et al.

*Judicial Notice—Foreign Law—Evidence—Equitable Lien—De-
fective Chattel Mortgage—Seizure of Chattels
by Creditor—Equity Jurisdiction.*

In the absence of statutory requirement, the courts of one
state do not take judicial notice of the unwritten or "judge
made" law prevailing in a sister state, but proof thereof must
be furnished by experts. p. 417

Statutes of other states can only be proved as a fact by an
authenticated copy of the law in question, or by reading it
from an authorized publication containing such law. p. 417

In the absence of proof as to the law of another state, the
rights of the parties are to be determined by the law of this
State. p. 417

A chattel mortgage, though lacking the affidavit as to the
*bona fides* of the consideration, required by statute, and not
recorded, is in effect an equitable lien upon the property therein
named. pp. 418, 419

A creditor who takes possession of chattels belonging to his
debtor, with notice at the time of an equitable lien thereon in
favor of another creditor, does not thereby acquire priority over
the latter. p. 421

One having an equitable lien on chattels of his debtor is enti-
tled to appeal to a court of equity to enforce and protect his
lien as against another taking possession of the chattels for a
pre-existing claim against the same debtor, and threatening to
dispose of them by sale and to appropriate the proceeds. p. 421

*Decided May 6th, 1921.*

Appeal from the Circuit Court of Baltimore City (Stan-
ton, J.).

The cause was argued before Boyd, C. J., Briscoe,
Thomas, Pattison, Urner, Stockbridge, and Offutt, JJ.

*Harry N. Baetjer* and *Joseph France,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellants.

*Matthew Gault,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the court.

The appellants, Phillips Lee Goldsborough, Emerson C. Harrington and E. McClure Rouzer, trustees, under a deed of trust to them from Wm. F. Applegarth, dated the 14th day of July, 1920, did, on the 1st day of September thereafter, file their bill in this case in the Circuit Court of Baltimore City upon the authority of the Circuit Court for Dorchester County, where said trust estate is being administered.

In their bill they alleged that included in the property conveyed and assigned to them under said deed were ten promissory notes drawn by Anderson T. Herd to the order of Wm. F. Applegarth dated the 30th day of April, 1920, each for the sum of $9,000. These notes were filed as exhibits with the bill and the court was asked to take and consider them as a part of it.

The bill then alleges:

"That simultaneously with the giving of said notes by him said Anderson T. Herd, as security for the payment thereof, did transfer to the said William F. Applegarth by bill of sale thereof dated the 30th day of April, 1920, one hundred and twenty head of Guernsey cattle, enumerated and mentioned in a schedule thereof attached to said bill of sale, which bill of sale and schedule are filed herewith and prayed to be taken as a part hereof, marked 'Complainants' Exhibit C.'

"That the cattle transferred by said bill of sale were at the date thereof in part on the farm of the said Anderson T. Herd, located in Bucks County, Pennsylvania, and in part on the property contiguous thereto, located in said county. That your orators are advised and aver that subsequent to the date of said bill of sale, to wit, on some date in the month

of August, 1920, the respondent, T. Garland Tinsley, *although having full knowledge of the existence of said bill of sale and to secure the payment to him of a past due indebtedness, caused sixty-three head of cattle so conveyed to said William F. Applegarth to be removed to the farm of the respondent,* Merryman, at Cockeysville, in Baltimore County, Maryland, and that the respondents are about to dispose of said cattle or a part thereof at public auction and to appropriate the entire proceeds of such sale to the payment of an indebtedness claimed to be due to the said Tinsley by the said Anderson T. Herd.

"That the cattle so taken by the respondents is the only property located in this State which belongs to the said Herd so far as is known to your orators, and it is so averred by them, and that by reason of the taking of the same by the said Tinsley and the placing of it in the custody of his agent, the said Louis McL. Merryman, your orators have lost control over the security given by said Anderson T. Herd to the said William F. Applegarth for the payment of the said indebtedness of ninety thousand dollars due by the said Herd as above set out, and which indebtedness and the security for the payment of the same is now owned, by virtue of said deed of trust, by your orators, trustees as aforesaid; and that if said respondents are permitted to dispose of said cattle and appropriate the proceeds of sale thereof to the use of the said Tinsley, the security for the indebtedness due to your orators by the said Herd will be lost to the extent of the number of cattle so wrongfully taken by the respondent and appropriated to his own purpose, to their great and irreparable loss, and will leave them with no security for the indebtedness due to them except to the extent that there may be other cattle covered by said bill of sale the value of which is uncertain and the title to which in the said Herd is in doubt and subject to conflicting claims."

The prayers of the bill are: (1) That the defendants be enjoined from disposing of the cattle so removed and held by them; and (2) that a receiver or receivers be appointed to take charge of and dispose of said cattle under the jurisdiction of the court and to pay over the proceeds thereof to the plaintiffs in satisfaction of the indebtedness so secured by said bill of sale, and after the satisfaction of the same, to dispose of the remaining proceeds of sale in the hands of such receiver or receivers in accordance with the orders thereafter to be passed by the court in relation thereto.

The bill of sale from Herd to Applegarth, which by the bill of complaint is made a part of it, is as follows:

"Know all men by these presents, That I, Anderson T. Herd, of the City of New York and State of New York, in consideration of the sum of ninety thousand dollars ($90,000) to me in hand paid by William F. Applegarth, Cambridge, Dorchester County, Maryland, at and before the ensealing and delivery hereof, do by these presents grant, bargain, sell, release and confirm unto the said William F. Applegarth all and singular the one hundred and twenty head of Guernsey cattle enumerated and mentioned in the schedule hereunto annexed, marked Exhibit 'A,' and made a part of this bill of sale.

"To have and to hold the said one hundred and twenty head of Guernsey cattle, and every of them, to and for the use, ownership and behoof of the said William F. Applegarth, his executors, administrators and assigns absolutely.

"And the said Anderson T. Herd, vendor, hereby covenants with the said William F. Applegarth, vendee, that he, the said vendor, is the lawful and absolute owner of the goods and chattels hereby conveyed and that he will warrant and defend the title to the same to the said William F. Applegarth, vendee, his executors, administrators and assigns, against any and all persons whomsoever claiming or to claim the same.

"The said bill of sale *is made subject to a consignment of the said cattle to Leander F. Herrick,* auction-

eer, of Worcester, Mass., who is to expose this herd to public vendue on the 29th and 30th days of June, A. D. 1920, at Herdlea Farms, Bucks County, Pennsylvania, provided an *order is duly executed* and delivered by me, the said Anderson T. Herd, to the said William F. Applegarth on the said Leander F. Herrick, auctioneer, authorizing him from the sale of the proceeds of the said cattle to pay the sum of ninety thousand dollars ($90,000) to the said William F. Applegarth. And also subject to certain other reservations enumerated in Schedule 'A' hereto annexed.

"In witness whereof, I have hereunto set my hand and seal this 30th day of April, in the year of our Lord one thousand, nine hundred and twenty (1920).

"Anderson T. Herd.   (Seal)

"Signed, sealed and delivered
    in the presence of:
        Wm. J. C. Dulany.

"On the day of the date of the above bill of sale livery of seisin of the articles mentioned in said Schedule 'A' was given by the said Anderson T. Herd to the said William F. Applegarth in the presence of us.

"W. J. C. Dulany.
"W. F. Applegarth.
Stuckett, Atty. at Law,
                        "Doylestown.

"State of New Jersey, County of Mercer, ss.:

"On the 30th day of April, A. D. 1920, personally appeared before me, a notary public, duly commissioned in and for the said state and residing at Doylestown, in said county, the above named Anderson T. Herd, and in due form of law acknowledged the foregoing estimate to be his act and deed and desired the same might be recorded as such according to law.

"Witness my hand and seal the day and year aforesaid.

"(Seal)                        William S. Ivins,
                            "Notary Public."

. Upon the bill and exhibits filed JUDGE BOND, then sitting in the Circuit Court of Baltimore City, ordered the defendants, Tinsley and Merryman, to appear in court on the day named in the order and show cause, if any they had, why a receiver or receivers should not be appointed as prayed, and further ordered that a writ of injunction be issued enjoining and prohibiting Tinsley and Merryman and each of them from disposing in any manner of the cattle brought to the farm of the respondent, Merryman, by or for the respondent, Tinsley, until the further order of that court; and the injunction was issued as ordered.

The defendant, Tinsley, appeared and on the 22nd day of September, 1920, filed a demurrer to the bill and, on the 26th day of November following JUDGE STANTON, then sitting in said court, filed his order by which he sustained the demurrer, denied the application for the appointment of a receiver, dissolved the injunction previously granted, and dismissed the bill. It is from that order that the appeal in this case was taken.

It will be seen from the allegations of the bill and the exhibits filed therewith that the bill of sale to Applegarth was executed in the State of New Jersey by "Anderson T. Herd of the City of New York and State of New York" upon property in the State of Pennsylvania, which, prior to the institution of these proceedings, was brought into this State.

It is contended by the defendants that the question presented by the demurrer—whether the plaintiffs are entitled to the relief sought upon the allegations contained in the bill —must be decided by applying the law of Pennsylvania to the facts alleged, and that, if it be so applied, it will be shown that the plaintiffs are not entitled to such relief. But as this case is before us on demurrer to the bill, the question presented cannot be decided upon the law of Pennsylvania or upon the laws of New York or of New Jersey, should it be held that such question is controlled by the law of either of these states, as there is necessarily no evidence before us of the law of any of these states.

The courts of one state do not take judicial notice of the unwritten or "judge made" law prevailing in a sister state in the absence of statutory requirement (16 *Cyc.* 884); but proof of same must be furnished by experts (2 *Poe, Pl. & Pr.,* 2nd Ed., sec. 272; *Zimmerman* v. *Helser,* 32 Md. 278); while *statutes* of other states can only be proven as a fact by an authenticated copy of the law or from a printed volume purporting to contain the statute of such state; Article 35, Section 53 of the Code of 1912; *Mandru* v. *Ashby,* 108 Md. 695; *Zimmerman* v. *Helser, supra; Harryman* v. *Roberts,* 52 Md. 76; *Gardner* v. *Lewis,* 7 Gill. 377.

As stated by Mr. Poe, Volume 2, Section 272: "If the matter to be proved is the existence and effect of foreign laws or customs, the proof as to unwritten laws must be furnished by experts, viz: Lawyers or judges, or both. As to written or statute law, it must be furnished by duly authenticated copy of the law in question, together with such explanation of its meaning and construction as may be furnished by experts. * * * The statute laws of the State may also be read from the authorized publications."

As there is no proof before us in this case of the statutes of the above mentioned states, including the State of Pennsylvania, the law is well established that the rights of the plaintiffs to the relief sought are to be determined by the law of this State.

In the case of *Mandru* v. *Ashby, supra,* the statutes of the State of Ohio, as to the effect of a seal attached to a promissory note, were involved in the defense made and the court there said: "In the first place, there was no proof before the court as to the law of Ohio on the subject of seals. Our courts do not take judicial notice of the laws of another state, and the Ohio statute should have been proved as any other fact in the case. *Greenleaf on Evidence,* Vol. 1, p. 8.

"Section 53, Article 35 of the Code, provides for the manner in which such statutes may be proved, and the mere reading of the law to the court in argument cannot supply this

defect in proof. In the absence of such proof, the court should have ignored the Ohio law and based its decision on the evidence in the case according to the law of Maryland." 22 *C. J.* 151; *Nat. Bank of Bristol* v. *B. & O. R. R. Co.,* 99 Md. 661; *Fouke* v. *Fleming,* 13 Md. 392; *Conolly* v. *Riley,* 25 Md. 402.

The chattel mortgage in this case, designated in the bill of complaint as a bill of sale, though executed and acknowledged by Herd, is without the affidavit of the mortgagee as to the *bona fides* of the consideration, and so far as the record discloses, is unrecorded, although it appears upon the mortgage that on the day of its execution, "livery of seisin" of the articles named in the schedule, which is mentioned in the mortgage and appended thereto, was given by Herd to Applegarth in the presence of those whose names appear thereto.

In *Textor* v. *Orr,* 86 Md. 396, McCauley, a manufacturer of barrels, was indebted to appellant, Textor, and to secure such indebtedness McCauley entered into an agreement with him in which it is said that:

"D. R. McCauley, of the first part, hereby gives the hoops which are now stored in the old stone foundry now owned by the C. A. Gambrill Manufacturing Company, said foundry is in Ellicott City, in Baltimore County, Maryland, as security for the payment of four notes, which are all dated April 2nd, 1896, drawn by John W. McCauley, favor of D. A. McCauley, say, running for 40, 60, 90 days and four months, amounts $300.00, $300.00, $300.00 and $356.43, total, $1,256 43/100.

"That said Anton Textor hereby agrees to release his claim against said hoops upon the payment of the last aforesaid note, amount $365 43/100; that the storage of said lot of hoops is to be paid by the said McCauley.

"That said McCauley claims that there are about three hundred thousand hoops in the old stone foundry; that said lot of hoops to be the property of said

Anton Textor in the event of any of said notes not being paid at their maturity."

JUDGE BRISCOE, speaking for the court, in discussing the agreements, said: "The law is well settled in this State that a promise to execute a mortgage of certain property or a defectively executed or unrecorded mortgage *creates an equitable lien* upon the property, binding the conscience of the mortgagor and enforceable by a court of equity against him. *Dyson* v. *Simmons,* 48 Md. 207; *Carson* v. *Phelps,* 40 Md. 73; *Triebert* v. *Burgess,* 11 Md. 452. An unrecorded mortgage under our statute is good between the parties thereto and a pre-existing indebtedness is a sufficient consideration. *Code,* Art. 21, Sec. 47; *Woods* v. *Fulton,* 4 H. & J. 327; *Alexander* v. *Ghiselin,* 5 Gill, 138. While an equitable mortgage or lien, such as the one before us in this case, is not valid and enforceable against a *bona fide* purchaser or mortgagee for value without notice (*Ohio Life Ins. Co.* v. *Ross,* 2 Md. Ch. 25; *Nelson* v. *Hagerstown Bank,* 27 Md. 51), yet it is enforceable not only against the mortgagor himself, but also against parties who claim under him as volunteers or without an equity *superior* to that of the creditor holding the lien." *G. Ober & Sons* v. *Keating et al.,* 77 Md. 102; *Ing* v. *Brown,* 3 Md. Ch. 525.

The mortgage in this case, though not having the affidavit required under our statute, and possibly not recorded, was in effect an equitable lien upon the property therein named, upon which the plaintiffs were entitled to invoke the aid of a court of equity in its enforcement or protection. *Brown* v. *Stewart,* 1 Md. Ch. 88; *Clagett* v. *Salmon,* 5 G. & J. 314; *Parsons* v. *Hughes,* 12 Md. 1; and other cases.

As disclosed by the bill of complaint, Herd, in April, 1920, gave Applegarth the mortgage herein mentioned, and at the time of its execution, the consideration therefore passed from Applegarth to Herd. The cattle at the time of the execution of the mortgage were in Bucks County, Pennsylvania, and as alleged in the bill of complaint, T. Garland Tinsley, in

August following the execution of the bill of sale, "although having full knowledge of the existence of said bill of sale and to secure the payment to him of a past due indebtedness, caused sixty-three head of cattle so conveyed to said William F. Applegarth to be removed to the farm of the respondent, Merryman, at Cockeysville, in Baltimore County, Maryland," and the bill further alleged "that the respondents are about to dispose of said cattle or a part thereof at public auction and to appropriate the entire proceeds of such sale to the payment of an indebtedness claimed to be due to the said Tinsley by the said Anderson T. Herd. * * * And that if said respondents are permitted to dispose of said cattle and appropriate the proceeds of sale thereof to the use of the said Tinsley, the security for the indebtedness due to your orators by the said Herd will be lost to the extent of the number of cattle so wrongfully taken by the respondent and appropriated to his own purpose, to their great and irreparable loss, and will leave them with no security for the indebtedness due to them except to the extent that there may be other cattle covered by said bill of sale, the value of which is uncertain and the title to which in the said Herd is in doubt and subject to conflicting claims."

It is clear from the allegations of the bill that at the time the cattle were removed from Pennsylvania, Tinsley knew of the existence of the mortgage to Applegarth, and they were removed by him to secure the payment to him of a past due indebtedness. Whether he knew of the mortgage at the time of the creation of the debt from Herd to him is not clearly stated in the bill, but in any event he knew of the mortgage at the time he took the cattle to secure his then existing debt *which was past due.*

The allegation is that he caused the cattle to be removed to secure the payment of the debt owing to him, at a time when he knew of the existence of said mortgage. This was not done by him as a purchaser, mortgagee or lien-holder without notice of the Applegarth mortgage.

If Tinsley, under the facts alleged in the bill, acquired any lien upon the cattle as a security for the payment of the debt owing to him by their removal from the State of Pennsylvania, such lien, if not *subject to the lien* of the Applegarth mortgage, is not *superior* thereto. *Russum* v. *Wanser,* 53 Md. 92; *Pomeroy, Eq. Jur.,* Par. 688, p. 1385; 27 *Cyc.* 1198 and 1217; and other cases cited above.

Yet the bill alleges that Tinsley was about to dispose of the cattle taken into his possession under circumstances not shown by the bill and to appropriate the entire proceeds thereof to the payment of the said indebtedness of Herd to him; which would, as the bill alleges, be prejudicial to the plaintiffs to the extent of largely depriving them of their security under said mortgage.

Under such facts and circumstances, the court of equity, under the laws of this State, was, in our opinion, open to the plaintiffs for the enforcement and protection of their equitable lien under the mortgage.

Being of this view, the court below, we think, erred in passing the decree appealed from.

*Decree reversed and cause remanded, appellees to pay the costs.*