## Turnpike Company *against* Wallace.

A turnpike company, in which the state holds stock, is not such a public corporation as is exempt from the operation of the act of the 16th of June 1836, which gives jurisdiction to the courts, upon the application of a creditor, to sequester the goods, credits, profits and tolls of the corporation for the payment of its debts.

The court in which the judgment against such corporation was obtained, has jurisdiction over all its property and estate, although part of it may not be within the same county.

CERTIORARI to the court of common pleas of *Huntingdon* county.

Michael Wallace obtained a judgment against the President, Managers and Company of the Huntingdon, Cambria and Indiana Turnpike Road, for the sum of 7311 dollars, upon which he issued a *fieri facias*, which was returned, " No goods, lands, or tenements whereon to levy." Whereupon he presented a petition to the court of common pleas, praying them to award a writ to sequester the goods, chattels, credits, rents, issues, profits, tolls, and receipts of the company, and to take such order in the premises as may be in accordance with the act of assembly.  Whereupon the court granted a rule upon the company to show cause, &c., upon the return of which the company assigned the following reasons against the further proceeding of the court.

" Because the commonwealth of Pennsylvania owns one hundred and seventy-one thousand eight hundred and fifty dollars of the stock of the corporation above named, whilst individuals own no more of the stock of said corporation than to the amount of sixty-two thousand and forty-eight dollars and twenty-three cents; and because by the several acts of assembly, relating to the corporation, the commonwealth has the right, which right she has always exercised, of appointing three out of seven of the board of mana-

gers of said corporation by three managers appointed by the auditor-general. The defendants, therefore, own that the Huntingdon, Cambria, and Indiana Turnpike Road Company is a *public* corporation within the meaning of the act of assembly of the 16th of June 1836, under which the plaintiff's proceeding is founded; and therefore protest against the exercise of jurisdiction by the court of common pleas aforesaid, over the corporation aforesaid, in the manner asked for by the plaintiff; and they further protest against the exercise of jurisdiction by this court (in case jurisdiction be assumed) over any part of the turnpike road owned by the company aforesaid, not within the limit of Huntingdon county."

The court below (Burnside, president) made the rule absolute, and appointed a sequestrator, in pursuance of the provisions of the act of assembly.

*Miles*, for plaintiff in error.
*Bell*, for defendant in error.

The opinion of the court was delivered by

ROGERS, J.—The act of the 16th of June 1836, which prescribes the mode of issuing executions against corporations, excepts from its operation, "a county, township, or *other public corporate body.*" The doubt is, whether a corporation in which the state owns a principal part of the stock, be a *public corporate body* within the meaning of the exception. It is very clear that the character of the corporation cannot depend on the quantity of the stock held by the commonwealth, so that if this case comes within the exception; for the same reason every corporation in which the state reserves an interest, however trifling, must be held to be in the same class. But on this construction, the act which is remedial, would be nearly a dead letter, as there are very few corporations, if any, in which the commonwealth does not hold some stock, or in which they have not some pecuniary interest. Besides, the act applies to banks, as well as other corporate bodies. In all of these the state has a deep interest, and in many holds stock to a large amount, with a power to appoint a portion of the directors. Will it admit of question, that the creditors of such institutions, as for example the creditors of the Banks of Pennsylvania and Philadelphia, may issue an execution under the act, to collect a debt owing by the corporation, or to enforce a contract. The words "other public corporate bodies" obviously apply to boroughs, cities, &c., and cannot be so tortured as to change the nature and character of the corporation. It is apprehended that this construction may be injurious to the rights of the commonwealth; but this consequence the legislature have foreseen, and effectually provided against. "In the case of any work (proviso to the eighth section) in the maintenance and repair of which the public may be interested, and which from time to time require a portion of the revenue of the road, &c. to be

[Turnpike Company v. Wallace.]

expended thereon, it is made the duty of the court, which awards the writ, to make such allowances, &c., and otherwise take such order as the public good shall require." The act itself, therefore, furnishes a complete answer to this objection; besides, it is difficult to perceive why the interest of the state should be protected at the expense of justice. We cannot see the propriety of a distinction, which exempts a corporation from process to compel the payment of a just debt, because the commonwealth holds an interest in it, whether that interest be great or small. The obligation to perform the contract in good faith is the same in one case as the other.

In the 73d section it is enacted, that in every case in which a judgment shall have been obtained, except (as against a county, township, or other public corporate body) and an execution thereon shall have been returned, unsatisfied in part or in whole, it shall be lawful for the court, in which such judgment shall have been obtained, upon the bill or petition of the plaintiff in such judgment, to award a writ to sequester the goods, chattels, and credits, rents, issues, and profits, tolls and receipts, from any road, canal, bridge, or other work, property, or estate of such corporation.

And in the next section it is provided, that the court shall, upon the awarding of any writ, appoint a sequestrator to execute the same, and to take charge of the property and funds taken and received, by virtue of such writ, and to distribute the net proceeds thereof among all the creditors of such corporation, according to the rules established in cases of the insolvency of individuals, and such sequestrator shall have all the powers, and be subject to all the duties of trustees, appointed under the law relating to insolvent debtors.

The right to sequester the property of the corporation is given exclusively to the court, where the judgment is rendered, and unless they have the power to take in execution all the estate of the debtor, of whatever description, without regard to its location, the plaintiff in many cases would be left without an adequate remedy or such a one as the act was designed to give him; for there is no mode by which the toll of a road, or other estate of a corporation in an adjoining county can be reached. Besides, it sometimes happens that the road passes through a county in which there are no toll-gates erected, so that there would be a portion of the road over which the creditors, by means of the sequestration would have no controul, which certainly could not have been intended by the legislature. The sequestrator is clothed with all the powers and is subject to all the duties of trustees, appointed under the law relating to insolvent debtors. In the latter case, by the assignment of the debtor, and by operation of law, on his discharge, all the estate of the insolvent, whether real, personal, or mixed, in possession or in action, and where situated, is vested in the trustees, for the benefit of the creditors. So here, the sequestration of the estate, and the appointment of the sequestrator, operates as a statutable assign-

ment of all the effects and estate of the corporation, in the same manner and to the same extent with the limitations which the court may impose upon it for the public good, as in the case of trustees of an insolvent debtor. The road is one entire property, placed under the control of an agent appointed by the court, and under their supervision, whose duty it is so to manage the concern as to benefit the creditors, paying a proper regard to the rights, interest, accommodation, and convenience of the public. We are the more inclined to this construction, because a contrary one would cause confusion, without any benefit whatever either to the creditors or the public.

Proceedings affirmed.