## SAMUEL D. BRADY *vs*. THE STATE OF MARYLAND.

THE CHESAPEAKE AND OHIO CANAL A PRIVATE CORPORATION.—The Chesapeake and Ohio Canal, though chartered for great public purposes, and exercising by grant a portion of the State's right of eminent domain to take private property for the use of its work, upon just compensation to the owner, is nevertheless a private corporation.

STATE SOVEREIGNTY,—ITS EFFECT WHERE THE STATE IS A SUITOR.—The fact that the State itself is a shareholder, or a large shareholder, in the capital stock of the company, does not impart to the company any of its sovereignty as such, nor can the State, by virtue of its sovereignty, claim any other or higher rights as a suitor than those of an ordinary stockholder, except so far as it may have rights and interests over other stockholders secured to it by law, and engagements with the company or its other stockholders in pursuance of law.

LIBERAL RULES OF INTERPRETATION TO BE APPLIED FOR THE BENEFIT OF THE STATE.—In view of the nature, objects and powers of this corporation, liberal rules of interpretation for its benefit ought to be adopted in expounding its privileges and rights for effectuating the designs of the Legislature, and securing the rights of the State in a work of such magnitude and involving such vast public interests.

LIENS AND PRIORITIES OF THE STATE: ASSIGNEE,—RIGHTS OF STATE AS: MORTGAGE, MORTGAGOR, MORTGAGEE: IMPLIED AGREEMENT; REGISTRATION: NOTICE: ATTACHMENT: INJUNCTION.—Under the Acts of 1834, ch. 241, and 1844, ch. 281, and the covenants and mortgages executed in pursuance thereof, the State became a creditor of the company for more than seven millions of dollars, principal and interest, and as security for its repayment pledged the whole of the net revenues of the company, as also all its other property and the rents and avails thereof; which pledge is still subsisting. The mortgage given in pursuance of the Act of 1844, ch. 281, bearing date the 8th of January, 1846, was acknowledged in Maryland on the 19th of January, 1846, and recorded in Allegany county on the 5th of May, 1848. A judgment in favor of S. D. B., against the company, was rendered on the 25th of October, 1844, revived by *sci. fa.* in October, 1855, and again on the 3rd of October, 1864. On the last *fiat* a writ of attachment by way of execution was issued, returnable in October, 1865. A bill for an injunction was filed in behalf of the State and a *pro forma* decree passed perpetually enjoining S. D. B. from further proceedings under the attachment. On appeal—HELD:

1st. That it is very clear from the language of the Act of 1844, and the mortgage made in pursuance of it, that the State waived its priority only in favor of the liens created and authorized by that Act. In all other respects, and against all other creditors, the State expressly reserved its rights and priorities.

2nd. That by the Acts of 1834, ch. 241, and 1844, ch. 281, all the net tolls and revenues of the Canal Company were assigned by way of security to the State, and as any other assignee, the State would have the right to interpose its claim against any subsequent attachment.

3rd. That the right of the State to see to the proper application of all the tolls and revenues of the company, to the legitimate objects had in view by said Acts of

Assembly, and prevent their waste or diversion to any other purpose whatever, is not to be interfered with by the application of the technical rules which govern the relation of mortgagor and mortgagee.

4th. That the State, although a mortgagee not in possession of the canal and other property of the company, cannot be debarred from the application of the tolls and revenues of the company, to the objects of the said Act of Assembly, and cannot be brought within the principle of an implied agreement between the mortgagor and mortgagee, that the mortgagor shall take the rents and profits to his own use until dispossessed by the mortgagee.

5th. That the credits attached passed to the rightful ownership of the State as an ordinary assignment, to which recording was not necessary; it is not necessary, as the law now stands in Maryland, that an assignee of claims or moneys shall give notice by registration or otherwise, in order to shield his claim from an attaching creditor.

6th. That the said Acts of Assembly are public Acts, of which the Courts take notice, and they are notice to the public of what they contain, and are sufficient to put any party dealing with the company upon inquiry.

APPEAL from the equity side of the Circuit Court for Allegany county.

The bill in this case was exhibited by the complainant, (at the instance of the Comptroller and of the Board of Public Works,) in its sovereign capacity as a State, against the Chesapeake and Ohio Canal Company, a corporation created by the State, and to which it had imparted a portion of its right of eminent domain, and, also, in its capacity as a creditor of said company, holding liens on its property and net revenues, and against an attaching creditor of said company; and the object of the bill was to enjoin said attaching creditor, &c.

No question is made in the bill as to the validity of the judgment on which the attachment was founded. But the complainant insists, that the aggregate of the sums attached did not constitute a greater sum than prudent men, charged with the management of the affairs of said company, and exercising reasonable, provident and proper foresight in the management of the canal, as a public work, ought to have reserved to meet the necessary current and probable contingent expenses of said company; and

that the company was without any other available means at its disposal to meet necessary current and probable contingent expenses; and the bill further insists, that the specific articles attached are necessary articles to be owned and possessed, and employed by said company in the proper working and management of said canal; and that if the same should be withdrawn from the possession and use of said company, it would be necessary to supply their places by other like articles or their equivalents.

The bill then shows the various acts whereby said company was incorporated, its franchises conferred, and its duties to the public imposed. It also shows the several claims of the State, as an ordinary stockholder, as a preferred stockholder, and as a creditor of said company, and which are fully set forth in the bill.

The bill relies on the stipulation in the covenant and obligation of said company, given in accordance with the requirements of the Act of 1834, chapter 241; and, also, upon the mortgage given by the company to the State, pursuant to the Act of 1844, chapter 281; and the complainant alleges that nothing whatever has been paid to the State on account of its claims.

The complainant therefore prayed for an injunction, as already stated.

The answer of Samuel D. Brady, the plaintiff in the attachment, admits the laying of the attachment by his direction; admits that the sums attached represent, in part, the income and earnings of the canal; and denies that the canal is in need of said sums to meet current and probable contingent expenses. The answer also admits the indebtedness of said company to the State to the extent of $2,000,000, under the Act of 1834, chapter 241, and insists that this is the only claim as to which the State occupies the position of a creditor. The answer insists, that the money so loaned, as well as the proceeds of the

subscription of $3,000,000, under the Act of 1835, as, also, the proceeds of the subscription of $1,375,000, under the Act of 1838, were exhausted in the prosecution of the work to Harper's Ferry, and thence to dam No. 6; and that afterwards, in December, 1839, the Canal Company issued scrip to the amount of $310.525.58, of which part was protected by sterling bonds; but $433,406.29, was without any protection whatever; and that the Legislature having declined to make any further appropriation, the work was suspended on the 16th of March, 1841; that subsequently, by the Act of 1844, chap. 281, the State agreed to waive its lien to the extent of $1,700,000, in favor of capitalists who should advance money to the Canal Company, on the credit alone of said company; that said capitalists paid only forty per cent. for said bonds; and the answer insists, that by such waiver, the State retired and gave her place to strangers; and that she cannot now claim priority over other creditors of said company, next after the bondholders, in whose behalf the waiver was made.    The said answer also denies, that the said defendant had any notice, by way of mortgage, or otherwise, of the claim of the State; and insists that said mortgage was, and is, wholly void, because not recorded within twenty days from its date, the property being, at the date of said mortgage, in the actual possession of said company.    The answer further states, that some of the land of said company is not required for use, nor used by said company, and insists, that the attaching creditor is entitled to sell all the right and interest therein of the said company; and that he was about to issue execution on his judgment to be levied on such land, when he was prevented by the filing of said bill.

The answer of the Canal Company, in effect, admits all the averments of the bill; and avers that the monies attached were absolutely necessary to keep the canal in repair; and insists that the claims of the appellant were

not, in any way, protected by any legislation, and were not claims which the company could validly pay; and, also, insists, that the specific articles attached were absolutely essential and necessary to keep the canal in proper repair. Accompanying the answer, a duly certified copy of a mortgage from the Canal Company to the State was filed, dated 15th of May, 1839, and recorded 21st of June, 1839 ; and, also, a copy of the report of the president of the company, for the year 1865.

It is not necessary to notice the answers of the garnishees, as no question arises on these answers.

By an agreement, the absence of an affidavit to the bill, in support of the averments thereof, was waived ; and the motion for an injunction (not having been acted on, *ex parte*, as the counsel for the attaching creditor desired to be heard,) was superseded by said agreement. The case, when heard, was heard on final hearing, on bill, answers and general replication ; and a decree, *pro forma*, was entered by agreement, awarding a perpetual injunction, and from which decree the present appeal was taken.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Thomas Perry* and *Wm. Price* for the appellant.

1. The State cannot, as a stockholder, step in and take priority over a creditor of the company. The Act of 1835, ch. 395, sec. 4, guarantees dividends out of the profits of the work ; and the Act of 1838, ch. 396, sec. 4, contains a similar guaranty. Those Acts do not require a lien for the dividends due the State. They are mere stipulations among the stockholders *inter sese*, that the State shall have this priority as to dividends ; this is made manifest by the fact that in making the subscription by the Act of 1835, the State exacted a lien on the amount subscribed for three

years, and the dividends out of the profits are guaranteed after the expiration of that period. The arrangement will be understood by reference to the 4th and 7th sections of the Act of 1835, chap. 395. There are no direct authorities upon this point, as it seems that no person has ever insisted that a stockholder could stand before a creditor. See *Ang. & Ames on Corps.*, secs. 85, 598, 600, 602. *Gilbert vs. Moody*, 3 *Comst. Rep.*, 479. *Canan vs. Arkansas*, 15 *How.*, 304. *Wood vs. Demman*, 3 *Mason C. C. Rep.*, 308.

2. A State by becoming interested in a private corporation, or even by owning all the capital stock, does not impart to such corporation any of its prerogatives as a State. It lays down its sovereignty, and exercises no powers not derived from the charter. The State has the same rights as an individual stockholder, neither more nor less. *Canan vs. Arkansas*, 13 *How.*, 309. *Bank of the U. States vs. The Planters Bank*, 9 *Wheat.*, 904. *Darrington vs. The Bank of Alabama*, 13 *How.*, 17. *Ang. & Ames on Corps.*, secs. 30, 31, 32.

3. A mortgagor in possession is entitled to take and use the rents, issues and profits, without accountability to the mortgagee. If the mortgagee desires to subject the rents and profits towards the satisfaction of his mortgage debt, he must foreclose or otherwise obtain possession. *Ford vs. Philpot*, 5 *H. & J.*, 314. *Weldon vs. Houghton*, 1 *Pick.*, 87. *Carns vs. McClary*, 5 *N. H.*, 529. 2 *Eden on Injunction*, 3rd *Edition*, 205, 206, (top,) *notes* 1, 2, 3. 3 *Pow. on Mortg.*, 946. *Canan vs. Arkansas*, 15 *How.*, 307, 309. 3 *Pow. on Mortg.*, 1083, *marg. Myers vs. White*, 1 *Rawle*, 355. *Chase vs. Palmer*, 25 *Maine*, 341. *Davenport vs. Bartlett*, 9 *Alabama*, 179. *Ang. & Ames on Corps.*, secs. 30, 31, 32.

4. It makes no difference that the revenues of the canal are included in the mortgage. They are not more included

than the property of the canal and the canal itself. For until the mortgagee enters or otherwise obtains possession, he cannot alter the revenues or the property itself. Nor can he hold the mortgagor to account for the revenues before his entry. The principle being that there is an implied agreement that the mortgagor shall take the rents and profits to his own use without accountability, until he shall be dispossessed by the mortgagees. *Welden vs. Houghton,* 1 *Pick.,* 87. *Carns vs. McClary,* 5 *N. H.,* 529. *Fisher on Mortgages,* 333. 3 *Pow. on Mortgages,* 6 *Eng. Edition,* 946. The mortgage is not regarded as an alienation, but as a collateral security for the debt until the entry of the mortgagee. *Ibid.*

5. It was not competent for the State to waive her liens as she did by the Act of 1844, ch. 281, sec. 4, in favor of a stranger, and then step in next to that stranger and hold the lien next to his. And this was her own view of her rights, for she took a new mortgage after her waiver, which is dated 8th of January, 1846. *Sam'l D. Brady's* judgment was recovered on the 24th of October, 1844, and was a lien upon the property of the canal before the Act of 1844 was passed.

6. The mortgage of the 8th of January, 1846, is that upon which the State in her bill relies. It was not recorded for more than two years after its date, viz: on the 5th of May, 1848. But the law of Maryland existing at the time of this mortgage, required all mortgages of real property to be recorded within six months, and all mortgages of personal estate to be recorded within twenty days. And as the State stands in this case precisely as an individual, this mortgage of hers cannot interfere with the rights of creditors of the Canal Company. *Cockey vs. Miller's Lessee,* 16 *Md. Rep.,* 201. *Price & Bevans vs. McDonald,* 1 *Md. Rep.,* 405.

7. There is no averment nor intimation in the bill, that

the Canal Company has committed any fraud, or has been guilty of any misappropriation of its revenues; nor even an intimation that the complainant is in danger of losing its security ; there is no prayer for the appointment of a receiver. The bill contemplates no change in the possession, but leaves the company in the undisturbed control and possession of its work. The bill does not ask a foreclosure, nor any proceeding of the kind. It is submitted, therefore, that the bill discloses no equity which would entitle it to the interference of this Court. Her sovereignty in this case is out of the question ; she has the same rights as an individual, and no greater.

*A. Randall*, Att'y Gen., and *Wm. Schley* for the State.

It may be proper to refer to the case of *Boyd vs. Chesapeake and Ohio Canal Company*, 17 *Md. Rep.*, 195. In that case, the company sought to shield its property from execution by interposing the liens of the State. This Court, page 211, said, that whatever protection the State might be entitled to claim, as mortgagee, could only be asserted by itself. It does not affect any of the questions which arise on this appeal.

In support of the decree, the counsel for the appellee will maintain, in argument, the following points :

1. Independently of its rights as a creditor, holding an express lien on the property and net revenues of the company, the State, in its sovereign capacity, is entitled to maintain this suit. The company, by its incorporation, became an agent of the State, for the contruction and maintenance of the canal. In the Act of incorporation, ( 1824, chap. 79, sec. 4,) it is made an express duty of the company "to repair and keep in order the canal, locks and other works necessary thereto." It is clear, that the Canal Company would be enjoined, if it was about to disable itself, by parting, voluntarily, with its earnings, necessa-

ry to keep in repair the canal locks, &c.; and public inter-est and convenience requires that others should be re-strained from depriving the company of means necessary to maintain the public works.

In all such cases, the State has the power of visitation. *Angell & Ames on Corporations, chapter* 19, *folio* 610 ; and in Maryland, by the 7th Article, secs. 1 and 2 of the existing Constitution, the State acts, in such cases, through the Board of Public Works. *Flower vs. Lewis*, 4 *Milne & Craig*, 254. *Storm vs. G. M. Rail Road*, 2 *Younge & Col-lyer*, 48. *Binney's Case*, 2 *Bland.*, 99. *Bosley vs. The Sus. Co.*, 3 *Bland.*, 63. *Parsons vs. Hughes*, 12 *Md. Rep.*, 1. *State vs. Nor. Cent. R. R. Co.*, 18 *Md. Rep.*, 213. *East R. R. Co. vs. Eastern R. R. Co.*, 7 *Eng. L. & E. Rep.*, 505. *Severn R. R. Co, vs. The King*, 2 `Barn. & Ald.*, 646. 16 *N. Y. Rep.*, 163, (*note at* 159.) *Angell & Ames on Corp.*, secs. 684, 695 and 695.

2. But the State, as a creditor, holding an express lien on the property and revenues of the canal, is clearly entitled to intervene. The company is charged to be insolvent, and irreparable damage will result to the canal if money, necessary for the repair of the canal, is permitted to be diverted from the use to which it is dedicated. It is not just language to say, that the money attached is the pro-per money of the company. It is money held in trust by the company, for the express purpose of keeping the work in proper repair. *Act of* 1824, *chap.* 79, *secs.* 8 and 9. *Act of* 1844, *chap.* 281, *proviso to sec.* 2. *Sus. Bank & Bridge Co. vs. Genl. Ins. Co.*, 3 *Md. Rep.*, 311. *Mayor & C. C. of Balto. vs. Balto. & O. R. R. Co.*, 6 *Gill*, 296. *Hamilton vs. Robinson*, 8 *Md. Rep.*, 301. *Hudson vs. Warren*, 2 *G. & J.*, 415. *Preston vs. Leighton*, 6 *Md. Rep.*, 88. *Hannon vs. State, use of Robey*, 9 *Gill*, 440. *Act of* 1824, *ch.* 79, *secs.* 3 and 11. *Hampton vs. Edelen*, 2 *H. & J.*, 66. *Williams vs. Banks*, 11 *Md. Rep.*, 198.

*Duncan vs. Manchester, &c.*, 8 *Price*, 509. *Ireton vs. Philpott*, 12 *Price*, 197. *Fletcher vs. Morny*, 2 *Story Rep.*, 555. *Mitchell vs. Winslow*, 2 *Id.*, 630. 6 *Am. Law Reg.*, 493.

3. The averment, in the answer of the appellant, that the moneys attached are not needed for repairs, is not sustained by proof. It is in conflict with the answer of the company, and is disproved by the various reports, which show that the expenses for ordinary repairs are always heavy, and the extraordinary repairs by no means few or far between. These reports, by agreement, are in evidence.

4. But, even if it were in proof, that the moneys attached were not necessary to be retained for necessary current and probable contingent expenses, still, under the Act of 1844, even if considered as surplus revenue, it ought to be applied in manner as therein provided. The State has a direct interest, that the bonds issued under said Act, and in favor of which the State waived its lien, should be extinguished as early as practicable. Any diversion of surplus capital to the payment of unpreferred debts, is a wrong to the State.

WEISEL, J., delivered the opinion of this Court.

The motion for a preliminary injunction in this case was postponed by an agreement of the solicitors, to be called up at a future day. Answers having been filed, it was afterwards agreed that the cause should be submitted upon final hearing, and that upon such hearing a decree *pro forma* should be entered denying the right of the appellant to enforce his judgment, and that a perpetual injunction should be granted, from which said Brady was to appeal. The injunction was accordingly entered on the 13th of February, 1866, from which this appeal has been taken.

It was therefore granted and perpetuated on bill, answers and exhibits.

The bill took a broader scope than the controversy with the appellant, touching his right to attach the chattels and moneys mentioned in the proceedings to satisfy his judgment. It embraces and enumerates the several relations of the State of Maryland to the Chesapeake and Ohio Canal Company, as stockholder and creditor, and re-asserts the claims of the State to the property, works and revenues of that company under the several Acts of Assembly which, from time to time, during the progress of its work, authorized aid to be afforded to it by subscriptions to its capital stock and by loans, and under the several promises, agreements and conveyances which those Acts of Assembly contemplated and provided for, and which were made, entered into and executed by the company. In view of these relations, and the heavy indebtedness to the State secured by these engagements and conveyances, the State, through its Board of Public Works, charged with its interests in this respect, claimed the protection of the Court and asked that the president and directors of the Canal Company should be strictly enjoined and prohibited from parting with any portion of its revenues, tolls or income, as net revenue or otherwise, until a sufficient amount shall have been deducted and reserved to meet all necessary current and probable contingent expenses, and from paying any debts from net revenues to any creditors not entitled to claim payment in priority of the State, whereby its revenues would be absorbed and applied to other purposes than those which would enable the company to perform all its duty and engagements to the State without hindrance or embarrassment. The company, by the admission of its answer and submission to the decree of the Court, is a willing party to the injunction and has not appealed from the order.

The only matter now to be determined upon this appeal

is, the right of the appellant, Brady, to a judgment of condemnation of the chattels and credits which have been levied on under his writ of attachment. If he has this right, the injunction as to him would be dissolved and his writ permitted to take its course at law.

The only garnishees who admit credits in their hands, or moneys belonging to the Chesapeake and Ohio Canal Company, are the Cumberland City Bank to the amount of $469, and John H. Shaw, the collector of the company at Cumberland, to the amount of $9,244.61. The American Coal Company, another garnishee, also admitted moneys due by it, at the time the attachment was laid in its hands, for tolls to the amount of $2,137.59, which however it was induced to pay over to the company upon an indemnity. These, it sufficiently appears from the answers, were of the tolls and revenues of the company.

The bill alleges and charges, that these sums are not more than should be reserved by prudent men charged with the conduct and management of the canal, to meet the necessary current and the probable contingent expenses of the company, according to past experience and the uncertain reverses and injuries to which such a work is constantly exposed from freshets and other casualties, and that the company is entirely without available means for such purposes, manifestly indispensable other than those of its ordinary tolls and revenues. The State further alleges and charges, that these moneys so attached are exempt from the reach of this creditor by reason of the various relations it sustains to the company as stockholder, with preferred claims to dividends, and as a creditor with liens upon all the property and works of the canal and all its net tolls and revenues, and relies for the assertion of this right upon the various Acts of Assembly passed upon these subjects, and the agreements and covenants with the company, and

the conveyances executed by it to the State, as provided for in said Acts.

We do not consider it necessary, in the aspects presented by this case, to examine minutely how far the State, as a stockholder in this work, with guaranties for preferred dividends out of its profits, would be sustained in enforcing its rights against the appellant. Much stress was laid in the argument upon the superior rights of the State as a sovereign, not only in granting the chartered rights to the company, but in exercising visitorial power over the company, and by this means controlling its revenues and keeping them within the line or course of expenditure provided for in its charter, and other laws authorizing subscriptions by the State to its stock. The provisions of the Constitution, in the establishment of a Board of Public Works for supervising all public works in which the State is interested as stockholder or creditor, were also urged as imparting to the State peculiar attributes in its character as complainant in this suit.

The Chesapeake and Ohio Canal Company, though chartered for great public purposes, and exercising by grant a portion of the State's right of eminent domain to take private property for the use of its work, upon just compensation to the owner, is nevertheless a private corporation. The fact that the State itself is a shareholder, or a large shareholder, in the capital stock of the company, does not impart to the company any of its sovereignty as such, nor can the State, by virtue of its sovereignty, claim any other or higher rights, as a suitor, than that of an ordinary stockholder, except so far as it may have rights and interests over other stockholders secured to it by law and engagements with the company, or its other stockholders in pursuance of law. The cases cited by the appellant illustrating this, are sufficient for the purpose. *Angell & Ames on Corp.*, secs. 30, 31, 32. *Bank of United States vs. Plan-*

*lers Bank of Georgia*, 9 *Wheat.*, 907. *Curran vs. State of Arkansas*, 15 *How.*, 304. *Wallace vs. Turnpike Company*, 8 *Watts*, 316. But while this company is a private corporation, as distinguished from a public municipal body, it is not of that ordinary kind which is created merely for the pecuniary benefit of its stockholders, but like that of the Baltimore and Ohio Rail Road Company, it was designed to promote great public interests, which were its chief objects, and to the accomplishment of which more than ordinary powers were granted, and liberal rules of interpretation for its benefit ought to be adopted in expounding its privileges and rights for effectuating the designs of the Legislature, and securing the rights of the State in a work of such magnitude and involving such vast public interests. *Mayor & C. C. of Balto. vs. Balt. & Ohio R. R. Co.*, 21 *Md. Rep.*, 91.

But the State, in this case, claims exemption from the proceedings instituted by the appellant, and asks for the restraining power of equity, on the ground of its character as a creditor of the company, with liens on its property, and net revenues and tolls, to secure its loans. It relies, in this branch of the case, on the Acts of 1834, ch. 241, and 1844, ch. 281, and the obligation or stipulation of the company and the mortgage executed by it, which these Acts authorized and required, as conditions upon which the Legislature of the State granted the aids for prosecuting and completing the canal to Cumberland, as provided in those Acts.

By the Act of 1834, ch. 241, a sum not exceeding two millions of dollars was authorized to be raised and loaned to the Chesapeake and Ohio Canal Company, to enable it to complete its work to Cumberland. As a condition precedent, the company, after assenting in general meeting to the terms of the Act relating to itself, was to prepare and deposit with the Treasurer of Maryland, a covenant and

obligation, verified by its corporate seal, and the signa-
tures of its president and directors, pledging the whole of
the net revenues of the company. and the whole of the
water rights, lands and other property at any time acquired
by it, or the rents or other. avails thereof, for the purpose
of securing to the State the payment of the interest and
principal of said loan ; the interest to be paid quarterly as
therein specified, and the principal at the time therein
stipulated. To secure the final payment of the debt, it
was further provided that the company should stipulate in
said covenant or obligation for the payment to said treasu-
rer of the whole of its net revenues, and the proceeds of
the sales or leases of the whole of the property thitherto or
thereafter to be acquired by it, as the same should from
time to time be sold or leased, until he should receive a
sum in his judgment sufficient to constitute a sinking fund
adequate to pay off the principal of said debt, when and as
the same should become payable, over and above the pay-
ment of the interest.

The bill alleges that the company assented to this law,
executed the covenant or obligation as therein provided and
required, and received the said loan of two millions of dol-
lars. It further states that nothing has ever been paid to
the complainant by said company, or in any way, on ac-
count of the principal or interest due on said loan ; and
that no payments have ever been made to the treasurer for
the purpose of constituting the sinking fund required ; and
that the interest which has accrued on the loan and is due
to the State, computed to the 31st of May, 1865, amounted
to the sum of three millions and fifteen thousand dollars.

The covenant or obligation executed by the Company
and delivered to the Treasurer of Maryland, in pursuance
of this Act, has not been exhibited with the bill, and is not
before the Court ; but the fact of its execution and delivery,
in the mode required by the law, was not denied in the

argument. The appellant in his answer admits that the State advanced to the company the two millions of dollars under this Act, in regard to which sum the State is a creditor, with all the rights of a creditor. The answer is silent as to the interest due and in arrear, but states that the principal was applied to the construction of the canal, and was exhausted when it reached Harper's Ferry. The annual reports of the company made in June, 1865, and June 1866, the one a part of the record and the other filed with it, and made evidence by the agreement of counsel, certify to the amount of such interest due and in arrear as stated in the bill.

To say nothing of other claims of the State as a creditor presented in the bill, here is an item of clear indebtedness exceeding five millions of dollars, for which the net tolls and revenues have been pledged to the State, by solemn obligation of the company, and in pursuance of one of the public statutes of the State. How far the information of the appellant is correct or can be relied upon as to the solvency and prosperous condition of the Canal Company, and its ability ere long to pay off its debts and establish its credit upon a firm and lasting basis, as averred in his answer, can be judged of in the face of this item of indebtedness alone, to say nothing of a ten millions of indebtedness besides, with an annual surplus of revenue from all sources, in 1865, of but thirty-seven thousand dollars, as disclosed by said reports.

Stopping at this point, we thus perceive that the State is a creditor of the company for a sum exceeding five millions of dollars, principal and interest, which debt originated by loan in 1835, under an Act of Assembly which authorized the pledge of the company, in the mode therein prescribed, of the whole of the net revenues of the company, as, also, of all its other property, and the rents and avails thereof, as security for its repayment, and which pledge was ac-

cordingly given and still subsists. What protective force this has will be hereafter noticed.

We pass now to the consideration of the Act of 1844, ch. 281, the last in the series of legislative aids which the State with unbounded liberality has afforded to this important work of internal improvement.

The canal having reached dam No. 6 in its construction, after an additional expenditure of the State's money, by way of subscriptions to its stock, amounting to four millions, three hundred and seventy-five thousand dollars, the generosity of the State and its known devotion to this enterprise were again appealed to. The application was not answered by a renewed appropriation of money, but by affording such means of credit to the company as would enable it to borrow from other capitalists money enough to complete the work to Cumberland. This was accomplished by authorizing the company by said Act of 1844, to borrow or raise upon its own bonds, *with preferred liens on its revenues,* a sum not exceeding one million, seven hundred thousand dollars. The State waived and postponed its rights and liens on the revenues of the company, held under former Acts, in favor of the bonds to be issued by the company, under this Act, so as to make them and their accruing interest preferred and absolute liens on its revenues, until said bonds and interest should be fully paid. The law, also, provided that the company should have the privilege and authority to use and apply such portion of the revenues and tolls as would be necessary, in the opinion of its president and directors, to put and keep the canal in good condition and repair for transportation, provide the requisite supply of water, and pay the salaries of officers and agents, and the current expenses of the company. It directed a semi-annual payment by the company of the interest to the preferred bondholders, and as soon as the net revenues arising from the canal and its works should

be more than sufficient for this purpose, and some other purposes specified, the company should annually pay to the Treasurer of the State, the surplus net revenues to such amount, not exceeding $25,000 annually, on an average of years, from the date of the completion of the work, as would be adequate for a sinking fund, to be invested by the treasurer and accumulated until deemed sufficient as a sinking fund to pay the principal of said bonds; the moneys so applied to be considered as held by the State as agent for the company, for the payment of said bonds as they matured, and on no account to be applied or used for any other purpose whatever. This Act further provided that *the Canal Company should execute to the State, and deliver to the Treasurer a further mortgage on the said canal, its lands, tolls and revenues, subject to the liens and pledges by this Act authorized, as an additional security for the payment of the loan made by the State to the company under the Act of* 1834, *ch.* 241, *and the interest due and in arrear, and which would thereafter accrue thereon, to be approved by the Attorney General as sufficient in law.* This being done, and the company's assent to it obtained and filed, the Act was to take effect and be in full force.

A mortgage was accordingly executed by the Chesapeake and Ohio Canal Company to the State of Maryland, a copy of which is exhibited with the bill, and not denied by the appellant's answer. After reciting the provisions of said Act, it conveyed all the property of said Canal Company, real and personal, then owned or thereafter to be acquired, to the State, *including the tolls and revenues that may thereafter accrue from the said canal and its works, and every part thereof, together with all goods, chattels, property and rights, and all tools, implements and boats then owned or which might thereafter be provided, built or purchased by the said company, or its agents, for the use of the said canal, or to be used in its construction, repairs or operations, subject,*

*however, to all the liens ·and pledges created or authorized, then or thereafter, by said company, under and in pursuance of the provisions of said Act of Assembly;* conditioned for the repayment to the State by the company of the two millions of dollars, and all interest in arrear and to accrue thereon, loaned to it under the Act of 1834, ch. 241.

This instrument bears date the 8th day of January, 1846. It was acknowledged in Maryland on the 19th day of January, 1846, and was recorded in Allegany county, Maryland, on the 5th day of May, 1848.

The judgment of the appellant was originally rendered on the 25th of October, 1844. This judgment was revived by *sci fa* in October, 1855; and, again, on the 3rd of October 1864. On this last *fiat,* the writ of attachment by way of execution was issued returnable to October term, 1865, of the Circuit Court for Allegany county, under which the chattels and credits already mentioned were attached.

Mr. Brady, the appellant, by his answer, and in the brief of his counsel, took three positions, which were mainly urged and relied upon in the argument. The first was, that by the Act of 1844, the State waived its liens upon the revenues and property of the company in favor of the bonds to be issued under it, and that by such waiver, the State retired and gave place to strangers, and having done so, it cannot now legally or in conscience step in before other creditors of the company, and stand next in priority to said bondholders. It is also admitted that the appellant is not one of said bondholders, or entitled to any priority over the State, except so far as he asserts it by reason of his judgment and proceeding in attachment.

It is very clear from the language of the Act of Assembly of 1844, and the mortgage made in pursuance of it, that the State waived its priority only in favor of the liens created and authorized by that Act. In all other respects, and against all other creditors, the State expressly reserved

its rights and priorities, and there is no doubt that one of the objects, if not the only object, of taking the new mortgage authorized by that Act, was to re-assert and re-secure its prior rights and claims, and place them beyond all cavil and dispute. If other creditors could thus step in and grasp by legal process the tolls or revenues of the company, or enforce executions upon its property and works, the plain design of that law would be frustrated. The work itself would not only be destroyed by the abstraction of the means for its preservation, repairs and operation, but the preferred creditors deprived of their chartered securities, and the State itself defeated in all its plans and munificence for making this work the great and important channel of trade which was designed by these Acts of Assembly, and the conveyances made under them. The appellant states, that his original judgment was obtained in October, 1844, which was prior to the passage of the law of 1844, ch. 281, which took place on the 10th of March, 1845, and that his lien upon the property of the canal was therefore prior to the law. This Court does not mean to pass any opinion, in this case, on the efficacy of judgment liens upon the real estate of the Canal Company. All the conveyances to the State are not before us in this cause. It is sufficient here to say, that by the Acts of Assembly of 1834, ch. 241, and 1844, ch. 281, and the covenant and mortgage which followed, all the net tolls and revenues of the Canal Company were assigned by way of security to the State, and, as any other other assignee, the State would have the right to interpose its claim against any subsequent attachment. The credits attached in this case, the appellant himself admits in his answer, and it is clearly shown elsewhere in the record, represent in part the income and earnings of the said canal.

A second ground taken by the appellant is, that the State is a mortgagee not in possession of the canal and the

other property of the company, and therefore it cannot divert the revenues to its use and possession upon the principle of an implied agreement between mortgagor and mortgagee, that the mortgagor shall take the rents and profits to his own use until dispossessed by the mortgagee.

It is very evident, from the Acts of Assembly and the covenant and mortgage referred to, that the Canal Company was to remain in possession and management of the work, while the net revenues were to be appropriated to the State's use as a creditor. A portion of the tolls and revenues were to be used, by express stipulation, for the purpose of repairs and to meet current expenses, and these were as much to be protected as the net earnings, for the vitality of the canal, as a public and profitable improvement, depended upon their use, as well as the ultimate security of the State as a creditor. And it seems unnecessary to inquire, in the condition of this work and its finances, as shown by the proofs in the record, how much would be needed for repairs, &c., for all the revenues are guarantied and assigned to the State, to be applied necessarily, first, to the repairs, maintenance and management of the work; next, to the preferred bondholders under the Act of 1844, the State being the agent and party for the accumulation and application of the sinking fund provided for by the law; and then, in its own right to its own claim as the next preferred creditor under both laws and the mortgage or assignment. The right of the State to see to the proper application of all the tolls and revenues of the company to these legitimate objects, and prevent their waste or diversion to any other purpose whatever, is not to be interfered with by the application of the technical rules which govern the ordinary relation of mortgagor and mortgagee. And the doctrines enunciated by this Court, in the cases of *Parsons vs. Hughes,* 12 *Md. Rep.,* 1, and the *State vs. Nor. Cent. R. R. Co.,* 18 *Md. Rep.,* 193, can well be applied

and extended to a case like this, the mortgagor here being a party defendant as well as the attaching creditor.

A third position taken by the appellant is, that the mortgage of the 8th of January, 1846, was not recorded for more than two years after its date, and that it cannot interfere with the rights of creditors without notice ; that he is a rightful and merctorious creditor of the company, and that he had no notice of the claims of the State at the time of the service of the attachment or before, or until after the filing of the bill in this case.

We think, that as to the credits attached in this case, they passed to the rightful ownership of the State for the purposes hereinbefore expressed, by virtue of the Acts of Assembly and the covenant and mortgage aforesaid, as an ordinary assignment to which recording was not necessary. The revenues and tolls were to be assigned to the State, and they were assigned, and it is not necessary as the law now stands in Maryland, that an assignee of claims or moneys shall give notice, by registration or otherwise, in order to shield his claim from an attaching creditor.

In addition to this, these Acts of Assembly are public Acts of which the Courts take notice, and they are notice to the public of what they contain,—13 *Wheat.*, 16. 3 *Bland*, 63 ;—and are sufficient to put any party dealing with the company upon inquiry.

With regard to the chattels spoken of in the proceedings as levied upon under the writ of attachment, it is not necessary for this Court to inquire. The answer of the Canal Company denies that they were levied on under said writ, but avers they were taken by the sheriff under another and different proceeding ; and that they are erroneously mixed up with this proceeding. The counsel for the appellant, in the argument before this Court, disclaimed any inten-tion to interfere with them, and stated that they were not intended to be levied upon under the writ of the appellant.

Under such circumstances, we forbear to express any opinion upon the appellant's right to them, but think, under the circumstances, that the injunction should cover them.

No exception was taken to the jurisdiction of the Court, nor could any be taken in the face of the agreements of counsel in the record. The whole scope of the bill presents a clear case for equity against the Canal Company, touching its revenues and the proper application of them, and any parties interfering in them would properly be made parties and come within the restraining powers of the Court, during the investigation of the matters in controversy, and be subject to its final decree in the premises.

Entertaining these views, we think the the action of the Court below should be sustained throughout, and that the decree awarding a perpetual injunction should be affirmed, but without costs.

*Decree affirmed.*