# The Muncy Creek Railway Company *versus* Hill.

The provisions of the Act of the 16th of June 1836 which empower a sequestrator to take possession and assume the control and management of the property of a corporation are restricted by the Act of the 22d of April 1858, so as not to apply to an unfinished railroad. It was the design of the latter act to give to the sequestrator, as the representative of creditors, the earnings of the completed portion of the road, but to preserve the corporate property within the possession, management and control of the corporate officers.

June 6th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lycoming county :* Of May Term 1877, No. 29.

J. C. Hill having obtained a judgment against the Muncy Creek Railway, and a fieri facias issued thereon having been returned

[Muncy Creek Railway Co. *v.* Hill.]

unsatisfied, petitioned the court for the appointment of a seques-
trator, and Michael Steck was appointed.

The Muncy Creek Railway Company was incorporated by Act
of Assembly approved May 21st 1864. The road thus chartered
was to run from Laporte, in Sullivan county, to a point near Mun-
cy, in Lycoming county, a distance of about thirty miles. Work
was done on said road in making bridges, grading, &c., for about
fourteen miles ; about six miles thereof were so far completed as
to be in running order, and provided with depots, turn-tables,
engines, passenger cars and other equipments, so that for three
years passenger and freight cars were running regularly over said
six miles, yielding revenues and receipts to the company. Steck,
by virtue of his appointment as sequestrator, took possession of
said six miles, employed a conductor, ticket and freight agents, and
such other employees as were necessary to conduct the business of
the road. H. R. Merhling, general superintendent, A. H. Hill,
conductor, Alexander Bubb, fireman, and William Reedy, assistant
agent of the company, employed thereon and acting under its con-
trol, took possession of the engines and cars of the road, and
refused to permit the employees of the sequestrator to assume the
management of them. Steck then asked the court for an attach-
ment against said parties, who, in their answer to the rule to show
cause why the same should not issue, averred their willingness that
the sequestrator should receive all the revenues, receipts and profits
of said road, either directly as the same should be paid, or in such
other manner as the sequestrator should deem proper, so as to
secure the full receipt of such revenues, but denied to him the
right to take the full custody and control of the road from the com-
pany, and to appoint superintendents, conductors, &c., for running
such road, and refused to surrender their positions as employees.

After argument, the court, Gamble, P. J., in an opinion, *inter
alia,* said :—

" The question raised by the petition and answer involves the
jurisdiction, powers and authority of a sequestrator, under existing
laws.

" The Act of Assembly of 1870, which repeals the 73d section
of the Act of 1836, is itself repealed so far as relates to the Mun-
cy Creek Railway Company, by the Act of March 28th 1871,
Pamph. L. 491. The statutory law applicable to this case is
therefore the 73d, 74th and 75th sections of the Act of 16th of
June 1836, as modified by the Act of the 22d of April 1858,
Pamph. L. 458.

" Under the provisions of the Act of 1836 it has been held that
sequestration operates as a statutable assignment of all the effects
and estate of the corporation, and that a road extending into dif-
ferent counties is under the *control* and *management* of the seques-
trator, whose duty it is to take possession and so manage the con-

[Muncy Creek Railway Co. v. Hill.]

cern as to benefit the creditors: Turnpike v. Wallace, 8 Watts 316. That the sequestrator *shall take possession* of the property of the corporation, &c., &c.: Bevans v. The Turnpike, 10 Barr 179.    A sequestrator appointed under the Act of 1836 is armed with all the orders and decrees that a court of chancery can enforce.    He has all the *powers* and is subject to all the *duties* of trustees appointed under the laws relating to insolvent debtors: Suydam v. N. W. Ins. Co., 1 P. F. Smith 394.    That it was always held that it belonged to the jurisdiction, powers and duties of a sequestrator, appointed under the Act of 1836, to take possession, control and management of the sequestered property, of whatever it might consist, is so abundantly established by authority and precedent that it is not believed to be doubted by the learned counsel in this case, but they are understood to contend that the Act of 1858 limits and restricts that right to the simple receipt and custody of the *receipts* and *revenues.*

"That act declares that these provisions of the Act of 1836 shall not apply to any unfinished railroad, with this proviso: ' Provided, that nothing herein contained shall be so construed as to prevent a sequestrator from taking custody of the receipts and revenues of the portion of any such road that may be so far completed as to be in running order.'

"It is admitted that the portion of road sequestered in this case is so far completed as to be in running order; that it is provided with depots and other buildings, turn-tables, engines, passenger cars and other equipments, and that passenger and freight cars have been regularly running thereon for about three years past, thus yielding revenues and receipts to the company.

"I think the proper and reasonable construction of the proviso under consideration is, that it excepts from the operation of the body of the act such portions of unfinished roads as are so far completed as to be in running order and capable of producing revenues.

"That the sequestration, manifestly contemplated, must of necessity include the road in running order with its equipments, as the only means by which there can be any receipts and revenues for the sequestrator to take custody.    Can it be supposed that the legislature intended to put the *receipts* and *revenues* in the custody of the law, for the benefit of creditors, and leave the only possible means of producing *receipts* and *revenues* in the possession and under the control of the debtor?    Such a proceeding would not only be wholly ineffectual, but it would not be sequestration as heretofore defined, nor could such a custodian be a sequestrator, in a legal sense.    But the construction I have suggested renders the provisions consistent and harmonious, makes a remedial law effective, and accords perfectly with the construction given to the Act of 1836, in the case of Beeler v. The Turnpike Co., 2 Harris 162.

" It is therefore ordered and decreed, that Michael Steck, sequestrator, &c., and duly appointed in the above stated case, do enter upon and into possession, control and management of that portion of the Muncy Creek Railway which is so far completed as to be in running order, together with its depots, turn-tables, engines, cars and other equipments, for the purpose of collecting, receiving and taking in custody the receipts and revenues thereof, and hold the same subject to the future order of the court. And all persons are hereby enjoined to abstain from obstructing, or in any manner hindering the said sequestrator in the discharge of the duties imposed upon him. And the costs of this proceeding are imposed upon the respondents."

The company took this writ assigning this decree for error.

*Bentley & Parker*, for plaintiff in error.—The manifest intent of the legislature was to release a railroad in process of construction, or, as the acts says, unfinished, from the operation of the Act of 1836, and then, in order that creditors might be protected in their rights, and that there might be an honest division of the earnings of any finished portion to such as are entitled to the same, the proviso was attached, which gave control of any such earnings to the person who might be appointed for such purpose.

*J. C. Hill*, for defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, October 1st 1877.

Under the writ issued to him as sequestrator, Michael Steck took possession of the buildings, rolling-stock and equipments of the Muncy Creek Railway Company on the 1st of March 1874. He appointed agents to operate the finished section of the road, and through them collected and took into his custody its receipts and revenues during the months of March and April. On the 1st of May 1874, officers employed by the corporation took the property into their hands, and have since retained it under the corporate control. While the right of the sequestrator to receive the earnings of the road has not been denied, the company have constantly insisted that they are entitled to the possession and management of their real and personal estate. The question is a narrow one, and has been raised by the petition of the sequestrator for an attachment against the persons who assumed the control of the property on behalf of the company. A rule to show cause was granted, upon which, after hearing, the Common Pleas decreed the surrender of " that portion of the Muncy Creek Railway which is so far completed as to be in running order, together with its turn-tables, engines, cars and other equipments" to the possession, control and

[Muncy Creek Railway Co. v. Hill.]

management of the sequestrator, "for the purpose of collecting, receiving and taking custody of the receipts and revenues thereof."

There is no doubt whatever that the action of the court would have been fully justified by the provisions of the 73d, 74th and 75th sections of the Act of the 16th of June 1836, if they had remained in force. By the 73d section, after the return of an execution against a corporation unsatisfied, a writ was authorized " to sequester the goods, chattels and credits, rents, issues and profits, tolls and receipts from any road, canal, bridge or other work, property or estate of such corporation." The 74th section made it the duty of the sequestrator to " take charge of the property and funds," and to make due distribution of their proceeds. That a sequestrator, under the Act of 1836, was entitled to assume the control of the works and structures out of which revenue was derived, has been repeatedly settled by judgments of this court : Turnpike Co. v. Wallace, 8 Watts 316 ; Bevans v. The Turnpike, 10 Barr 179 ; and Beeler v. The Turnpike Co., 2 Harris 162. The idea of a transfer of possession is embodied in the etymological signification of the word sequestrate. Its original meaning was to give up for safe keeping. Throughout the civil law and common law precedents, process of sequestration against revenue or income has been treated as carrying with it the right to the possession of the property out of which the revenue or income issued.

It is competent, however, for the legislature to confine the process to stricter limits. And the peculiar language of the Act of the 22d of April 1858, indicates a purpose to modify and restrict in essential respects the remedy by sequestration as against a particular class of railroad corporations. It declared that so much of the Act of 1836 as related to the appointment of sequestrators in cases of judgments recovered against corporations should not apply to any unfinished railroad. The enactment was followed by this proviso : " That nothing herein contained shall be so construed as to prevent a sequestrator from taking custody of the receipts and revenues of any portion of any such road that may be so far completed as to be in running order." The difference between the phraseology of this act and that of the Act of 1836 is marked and significant. The effect of the later statute is to declare that "the goods, chattels and credits, rents, issues and profits, tolls and receipts" of an unfinished railroad shall not be sequestered, and that a sequestrator shall not "take charge of the property and funds" of such a railroad, but that he shall have power to " take custody of the receipts and revenues" of any completed section. The act was drawn with apparent care, and so as to anticipate and avert any implication to be founded on the confused employment of technical words. Property was " sequestered" under the Act of 1836. The Act of 1858 simply authorized the payment of income to a sequestrator for the benefit of the creditors of the corporation.

[Muncy Creek Railway Co. *v.* Hill.]

While it would be equally unprofitable and unnecessary to conjecture the motives for the legislative action, it is possible that the public interest was supposed to be involved in the completion of a railroad partly built, and that the maintenance of the corporate property under the control of a board of directors might be essential to that result. The attainment of this end can be made entirely consistent with the appropriation to creditors of the income derived from the finished road. No embarrassment can arise in carrying out the intention of the legislature, for there is ample inherent power in the Court of Common Pleas to enforce the performance of the duties equally of the directors and the sequestrator. In the decree that has been made, however, that power has been exercised in a wrong direction. It was the design of the Act of 1858 to give to the representative of the creditors the earnings of the completed portion of the road, but it was equally its design to preserve the corporate property within the .possession, management and control of the corporate officers.

> The judgment of the Court of Common Pleas is reversed, and it is now ordered and adjudged that the rule to show cause why an attachment should not be issued be discharged, and that the petition of the sequestrator be dismissed.